**UNITED STATES of America, Appellee,**

v.

**David Collins CLIFFORD, Appellant.**

**No. 81–1281.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 13, 1981.

Decided Nov. 30, 1981.

---

James D. Leach (argued), Rapid City, S. D., for Mr. Clifford.

Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., Jeffrey L. Viken (argued), First Asst. U. S. Atty., Rapid City, S. D., for United States.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

David Collins Clifford appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C.app. § 1202(a) (1976). He asserts that the district court[1] erred in denying his motion to suppress the gun seized incident to his arrest in the home of a friend, Florence Le-Deaux, and in denying his motion to dismiss the indictment with prejudice for violation of the Speedy Trial Act. For the reasons set forth below, we affirm.[2]

I. *Search and Seizure.*[3]

On July 22, 1980, tribal police officers of the Oglala Sioux Tribe, in response

---

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

2. On appeal, this court initially issued an order of limited remand on September 2, 1981, directing the district court to determine expressly whether Florence LeDeaux consented to the police entry of her home. This court, however, retained jurisdiction of the case. On remand, the district court ruled that the Government failed to establish by a preponderance of the evidence that Florence LeDeaux consented to the police entry, and returned the record to this court.

3. The parties have addressed the search and seizure issue in terms of the fourth amendment. That provision, however, does not technically govern the tribal officers who made the arrest and conducted the search incident to that arrest. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978). Rather, the Indian Civil Rights Act governs the conduct of the tribal police in this case. That Act provides in relevant part:

> No Indian tribe in exercising powers of self-government shall—

to reports of disturbances, went to the home of Florence LeDeaux on the Pine Ridge Indian Reservation in South Dakota. A tribal policeman, looking through the window, observed Clifford inside the house. At that time, one of the policemen knew of an outstanding federal warrant for Clifford's arrest. Upon entering the LeDeaux home, one of the policemen approached Clifford and informed him that he was under arrest. Clifford resisted, but the policemen subdued him, searched him, and seized a loaded pistol from his back pocket.

The trial court denied Clifford's motion to suppress the pistol on the basis that Clifford, as a guest in LeDeaux's home, had not established an expectation of privacy that would entitle him to challenge the entry and arrest.

On appeal, Clifford asserts that he had been at Florence LeDeaux's home between two and six hours before his arrest. As a guest, Clifford maintains that he possessed a legitimate expectation of privacy in the LeDeaux home. Relying on *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), Clifford contends that the police entry without a *search* warrant rendered invalid his arrest and the seizure of the gun incident to that arrest.

The Government argues that *Steagald* does not apply retroactively, and that, as a mere guest in the home, Clifford has no standing to challenge the search and seizure.

*Steagald* does not control this case. In *Steagald*, police entered Steagald's home without a search warrant to arrest Ricky Lyons, the subject of an arrest warrant. While there, police seized drugs that were in Steagald's possession. The Court held

\* \* \* \* \* \*

(2) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized[.]  [25 U.S.C. § 1302(2) (1976).]

In light of the legislative history of the Indian Civil Rights Act and the similarity between

that in the absence of exigent circumstances or consent, police may not legally enter a third person's home to search for the subject to an arrest warrant.  101 S.Ct. at 1652–53.  To make a valid entry, police must have a search warrant based on a probable cause belief that the subject of the arrest warrant is inside the third person's home.  *Id.*

In the present case, unlike *Steagald*, the Government has prosecuted Clifford, the subject of the arrest warrant.  Steagald, as the occupant, could object to the entry because he had a legitimate expectation of privacy in the premises.  Unless Clifford can establish that he, like Steagald, had a legitimate expectation of privacy in the premises at the time of the arrest, *Steagald* provides no basis for his challenge to the police entry.

█ Even assuming, however, that Clifford had the requisite privacy interest, he still could not successfully challenge the police entry in this case.  In *Payton v. New York*,[4] the Supreme Court indicated that an *arrest warrant* will authorize police entry into the arrestee's dwelling:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law.  Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.  [*Payton v. New York*,

§ 1302(2) and the Constitution, this court has determined that fourth amendment standards govern the conduct of tribal officials.  *See United States v. Lester*, 647 F.2d 869, 872 (8th Cir. 1981).

4.  445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. 639 (1980).  In *Payton*, however, the Court held impermissible the warrantless entry of a home to arrest the occupant.  *Id.* at 603, 100 S.Ct. at 1388.

*supra*, 445 U.S. at 602–03, 100 S.Ct. at 1388.][5]

If police had possessed an arrest warrant for Ms. LeDeaux and reasonably believed that she was within the premises, those officers could have legally entered her home to arrest her. No additional search warrant would have been required. Clifford hardly can claim greater rights in LeDeaux's home than Ms. LeDeaux herself possessed. Therefore, assuming Clifford could assert a legitimate privacy interest in LeDeaux's home, the arrest warrant[6] for Clifford and the officers' knowledge of his presence in the home[7] justified their entry and subsequent search of Clifford incident to the arrest.

Thus, whether or not Clifford enjoyed a legitimate expectation of privacy in LeDeaux's home is not crucial here. If Clifford did not have a legitimate expectation of privacy, his rights were not violated. If, on the other hand, Clifford had a legitimate expectation of privacy in the premises, *Payton* authorizes entry on the basis of the existing arrest warrant for the defendant and probable cause to believe that the defendant was within the premises.[8]

## II. *Speedy Trial Act.*

On June 30, 1980, prior to Clifford's firearm conviction, the United States District Court for the District of South Dakota, The Honorable Donald J. Porter presiding, had sentenced Clifford to forty months' imprisonment on two assault charges. At the time of Clifford's sentencing on the assault convictions, Judge Porter ordered the federal assault sentence to begin immediately after Clifford had served the remainder of an uncompleted Nebraska jail sentence. Judge Porter accordingly authorized Clifford's release from federal custody so that Clifford could return to Nebraska to complete his jail sentence there. Clifford, however, failed to report to Nebraska authorities, prompting the issuance of the federal arrest warrant upon which the tribal police relied in arresting Clifford in LeDeaux's home.

On August 6, 1980, the Government indicted Clifford for the firearms violation, the subject of the present conviction and appeal. Following his arrest and this indictment, Clifford remained in jail in South Dakota awaiting trial on the firearms charge. On August 25, 1980, defense counsel and the Government, with court approval, entered into a stipulation permitting Clifford to return to Nebraska to complete his Nebraska jail sentence pending trial on the firearms charge.[9] As a result of the

---

**5.** The Court in *Steagald* approved this aspect of *Payton*, by stating that "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Steagald v. United States, supra*, 101 S.Ct. at 1652.

**6.** Although the arresting officers did not actually possess the federal warrant during the entry and arrest, one of the officers knew of an outstanding warrant for Clifford's arrest for his failure to appear to serve a sentence. Under these circumstances, the officers did not need to possess the actual warrant. *United States v. West*, 517 F.2d 483, 485 (8th Cir.), *cert. denied*, 423 U.S. 948, 96 S.Ct. 365, 46 L.Ed. 283 (1975). Their awareness of that warrant, the validity of which has not been challenged, justified the police entry.

**7.** The district court found that the officers could see Clifford inside the house. LeDeaux had testified that no one could see into her house because draperies covered the windows and doors. The court specifically discounted LeDeaux's testimony, crediting instead the testimony of the arresting officers.

**8.** Our decision does not determine whether the search warrantless entry may have violated LeDeaux's rights. Nor should it be read as providing a means for circumventing the requirement of a search warrant prescribed by *Steagald*. *Steagald* stands for the proposition that the owner's rights to privacy within his home may not be invaded without a search warrant, when police seek to arrest a third person within those premises.

**9.** The Stipulation and Order, approved by the district court, provides in part:

3. Defendant has a county jail sentence in Sheridan County, Rushville, Nebraska which at this time is uncompleted.

4. Plaintiff and defendant both desire that defendant be returned to Sheridan County to complete his Sheridan County jail sentence pending the resolution of case No. CR 80–50056–01 [the firearms charge] and the appeal of the instant case, No. CR 80–30006–01 [the assault convictions].

5. Part of the reason why defendant desires to be returned to Sheridan County

stipulation, Clifford remained in the custody of Nebraska authorities from August 27, 1980, until completion of his Nebraska sentence on December 23, 1980, when he returned to South Dakota. On December 22, 1980, Clifford filed a motion to dismiss asserting that the Government's delay in prosecuting him on the firearms charge violated the Speedy Trial Act, 18 U.S.C. §§ 3161–3174.[10]

Both parties agree that the seventy-day period within which Clifford must be tried pursuant to the Speedy Trial Act began on August 6, 1980, the filing date of the indictment. They also agree that 211 days elapsed before Clifford's trial began on March 5, 1981. In addition, Clifford concedes that thirty-one days, during which the court considered his suppression motion, constituted excludable delay.[11] Clifford, however, disputes the district court's determination that the 118 days he spent serving the remainder of his Nebraska sentence,

should be excluded from computation for speedy trial purposes.[12]

The district court excluded the 118 days Clifford spent in the Nebraska jail on the basis of 18 U.S.C. § 3161(h)(8),[13] the "ends of justice" exclusion of the Speedy Trial Act, and 18 U.S.C. § 3161(h)(1), the "other proceedings" exclusion. Judge Porter's ruling denying Clifford's motion to dismiss states:

The period of time Defendant spent in Nebraska state custody at Sheridan County Jail, August 27, 1980, to December 23, 1980, is excludable delay pursuant to 18 U.S.C. §3161(h)(8) as resulting at the request of defense counsel and government counsel as set forth in the stipulation filed with the Court on or about August 19, 1980. The Court ordered Defendant placed in Nebraska state custody during the pendency of the firearms case at the request of defense counsel and for Defendant's benefit. The procedure employed assured that Defend-

---

pending the resolution of case No. CR 80–50056–01 and the resolution of the instant case is that it is unclear whether he is receiving credit on that sentence during his incarceration in Pennington County [, South Dakota].

**10.** Section 3161 of the Speedy Trial Act provides:

(c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. [18 U.S.C. § 3161(c)(1) (Supp. III 1979).]

**11.** The Speedy Trial Act provides that certain periods shall be excluded in computing the time within which trial must commence. *See* 18 U.S.C. § 3161(h) (1976 & Supp. III 1979). The Act specifically provides for exclusion of

[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to—

\*   \*   \*   \*   \*   \*

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[.] [18 U.S.C. § 3161(h)(1)(F) (Supp. III 1979).]

**12.** Excluding the 31 days for consideration of Clifford's suppression motion and the 118 days Clifford spent in a Nebraska jail, the trial commenced 62 countable days after the filing of the indictment, within the 70 days required by the Act.

**13.** Section 3161(h)(8) of the Speedy Trial Act provides in part:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

\*   \*   \*   \*   \*   \*

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

ant's time in custody would be credited on Defendant's Nebraska state sentence. A miscarriage of justice would result if Defendant remained incarcerated but received no credit for time served against the Nebraska state sentence. The period of delay caused by this procedure was not of undue length. The procedure employed was requested by defense counsel and was, therefore, consented to by Defendant through counsel. The ends of justice served by this procedure outweigh the best interests of the public and Defendant in a speedy trial.

In effect, Judge Porter treated the stipulation as a continuance enabling Clifford to complete his Nebraska sentence. The stipulation stated that the Government and Clifford "both desire that defendant be returned to Sheridan County [Nebraska] to *complete* his Sheridan County jail sentence pending the resolution of [the firearms charge] and the appeal of the [assault convictions]." (emphasis added). By the terms of the stipulation, the parties contemplated the completion of the remainder of the Nebraska sentence before Clifford's trial on the firearms charge.

While a court generally should make the findings required by section 3161(h)(8)(A) at the time it grants the continuance, the Speedy Trial Act does not require the court to make a contemporaneous record. *See United States v. Edwards*, 627 F.2d 460, 461 (D.C.Cir.), *cert. denied*, 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). In the circumstances of this case, we hold that the district court properly excluded the 118 days Clifford spent completing his Nebraska sentence under section 3161(h)(8)(A) of the Speedy Trial Act.

Having found no error in the trial court's rulings, we affirm.