UNITED STATES of America, Appellee,

v.

Daniel McINTOSH, Appellant.

No. 87–2611EM.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1988.

Decided Sept. 15, 1988.

Daniel P. Reardon, Jr., Clayton, Mo., for appellant.

Debra E. Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLE*, District Judge.

WOLLE, District Judge.

Daniel McIntosh was tried, convicted, and sentenced on the charge of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). At the conclusion of the jury-waived trial, the District Court[1] ruled that St. Louis police officers had not violated McIntosh's Fourth Amendment rights when, without consent or exigent circumstances, they entered his temporary residence and seized a handgun they discovered while searching for a person who did not reside there. The officers had no search warrant but were in the process of executing an arrest warrant for one Ricky Durham, who did not live in the home. Questions presented on this appeal are whether McIntosh had standing to assert Fourth Amendment rights, whether the officers' entry and search were with consent, and whether the arrest warrant for a third person gave officers authority to enter McIntosh's temporary residence and seize his handgun found there. We agree with McIntosh that he had standing, entry was without consent, and a search warrant was required. We therefore reverse and remand.

Although the issues here presented are largely fact-bound, there is little disagreement concerning the incident that gave rise to the seizure of McIntosh's weapon. The relevant evidence was developed first at a suppression hearing and thereafter at trial. At 8:00 a.m. on July 8, 1987, St. Louis

---

* The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Myron H. Bright, Senior Circuit Judge, sitting by designation in the United States District Court for the Eastern District of Missouri.

police officers learned from the FBI that they might be able to execute an outstanding arrest warrant for one Ricky Durham who was wanted for first degree murder. Durham was reported to be at the home of Larry Shurn, a convicted felon and acquaintance of Durham. The house was owned by Shurn's mother. It turned out, however, that Durham was not at the home, but McIntosh was there as an overnight guest of Shurn. McIntosh had been staying at the home for the past three or four days.

At 9:30 a.m. that morning six police officers went to the Shurn residence. While two officers waited at the rear door, four officers, with weapons drawn, went to the front entrance, knocked on the door, and announced their presence. A person within the home, one Willie Greer, opened the door, and two officers stepped inside and asked Durham's whereabouts. Greer responded truthfully that no one was there but "me and my friend," the friend being McIntosh. One officer immediately approached McIntosh and asked him to "get up." McIntosh raised up from his position on a couch, and the officer was then able to observe in plain view a .25 caliber automatic pistol on the cushions where McIntosh had been reclining. The officer seized the gun, asked McIntosh to identify himself, and soon recognized him as a convicted felon. The officers placed McIntosh under arrest on suspicion of being a felon in possession of a firearm. The officers did not find Durham during the protective sweep search of the residence that followed.

Before trial a United States Magistrate [2] found that McIntosh had standing to raise the Fourth Amendment issue, because he had a legitimate expectation of privacy within the Shurn home while staying there as an overnight guest. Without deciding the question of consent for the search, the magistrate denied McIntosh's motion to suppress the weapon on the theory that once the police officers were legitimately within the residence to arrest Durham, they had the right to perform a protective sweep search of the house and seize the weapon discovered in plain view on the couch beneath McIntosh.

The district court, upon review of the magistrate's report and recommendation and consideration of trial testimony, concluded that McIntosh's handgun had been properly received in evidence. The court found that McIntosh had standing, based on his legitimate expectation of privacy within the Shurns' residence while staying there for several nights. The court found the officers had not received consent to enter and search the house. But the court concluded, as had the magistrate, that the arrest warrant for Durham gave the officers authority to enter the dwelling to search for Durham and thereafter to seize McIntosh's weapon seen in plain view, notwithstanding their failure to obtain a search warrant.

■ I. The question of standing gives us little pause. The district court correctly found from the evidence that McIntosh had been residing at this dwelling as the Shurns' guest for several days and had a legitimate expectation of privacy within the residence. Perhaps Durham, a nonresident, would have lacked standing to challenge this entry and search, but on the facts here the resident McIntosh did have standing to assert his Fourth Amendment rights. *United States v. Perez*, 700 F.2d 1232, 1236 (8th Cir.1983); *see Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (articulating as test for standing whether person has "legitimate expectation of privacy" in area which is subject of search and seizure).

II. Neither is there merit in the government's contention that the officers had received consent to enter and search the house. Greer opened the front door for the officers because they had weapons drawn when they demanded entry. The burden was on the government to prove that consent to search was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). The totality of the

---

**2.** The Honorable William S. Bahn, United States Magistrate for the Eastern District of Missouri.

circumstances permits no other conclusion than that the entry and search were not consensual. *See Schneckloth v. Busta-monte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

■ III. We turn to the central issue presented by the parties—whether the officers' entry into the residence and seizure of McIntosh's handgun exceeded the authority provided by the warrant for Durham's arrest. Controlling decisions of the United States Supreme Court construing the Fourth Amendment plainly deny the officers that authority. We emphasize that the government concedes the absence here of exigent circumstances.

In *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Court held that in the absence of exigent circumstances officers may not enter a home to conduct a search or make an arrest unless they have first obtained a search warrant. *Id.* at 590, 100 S.Ct. at 1382. The Court in dictum suggested, however, that no search warrant would be required if the officers had an arrest warrant and were attempting to arrest the subject of the warrant in the person's own residence. *Id.* at 602–03, 100 S.Ct. at 1388–89. Here, of course, the arrest warrant was for Durham, a nonresident, not McIntosh who was living in the house.

*Payton* principles were refined in *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In *Steagald,* officers had an arrest warrant for a federal fugitive, one Ricky Lyons, and on a report that he was staying in Steagald's home they attempted to execute that arrest warrant by entering and looking for him at that residence. The officers were unable to find Lyons, but during the search the officers found cocaine and other evidence that incriminated the homeowner Steagald. Steagald's conviction of a drug offense based on the seized evidence was reversed. The Court perceived the danger that an arrest warrant for a person not residing in a home might "serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place."

*Id.* at 215, 101 S.Ct. at 1649. The Court confirmed the *Payton* dictum that "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Id.* at 221, 101 S.Ct. at 1652. The Court, however, carefully distinguished entry with an arrest warrant for a person living in the home from entry with an arrest warrant for a person not living there. The former is constitutionally permissible, the latter an unconstitutional invasion of the privacy of the home in the absence of a warrant to search that home. We repeat the Court's concluding rationale for this distinction.

> The additional burden imposed on the police by a warrant requirement is minimal. In contrast, the right protected—that of presumptively innocent people to be secure in their homes from unjustified, forcible intrusions by the Government—is weighty.

*Id.* at 222, 101 S.Ct. at 1652–53.

Here, as in *Steagald,* no exigent circumstances justified the officers' entry and search of McIntosh's residence for the subject of the arrest warrant, the suspect Durham. No policy interest warrants a distinction between Steagald, the homeowner, and McIntosh, the invited guest who had resided in the home for several days. A search warrant was required in *Steagald* to enable officers to search for Ricky Lyons, the person named in that arrest warrant who did not live in the home; a search warrant was therefore also a prerequisite for the officers here to invade McIntosh's temporary residence to search for Ricky Durham who did not live there.

The cases the government cites do not support its contention that the arrest warrant for Durham legitimized the search of McIntosh. In *United States v. Clifford,* 664 F.2d 1090 (8th Cir.1981), the defendant who was searched while staying at a friend's home was himself the subject of the arrest warrant. This court held that even if the defendant Clifford had a legitimate expectation of privacy in the friend's home, "*Payton* authorizes entry on the basis of the existing arrest warrant for the defendant and probable cause to believe

that the defendant was within the premises." *Id.* at 1093. Our *Clifford* opinion did not hold nor suggest that an arrest warrant for a person with no legitimate expectation of privacy in the home, such as Durham here, would authorize entry into the home and search of persons other than the arrestee. *Accord, United States v. Underwood,* 717 F.2d 482, 483 (9th Cir.1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984) (upholding search of residence of subject of arrest warrant). Similarly, in *Washington v. Simpson,* 806 F.2d 192 (8th Cir.1986), this court upheld a search of an apartment because the officers had arrest warrants for a person who resided there with the person who was protesting the search. *Id.* at 196.

We recognize that a sweep search is constitutionally permissible when law enforcement officers, properly within a dwelling to execute a warrant, must search for potentially dangerous persons. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). But the sweep search was not permissible here when the officers were not properly within the home to execute a search warrant or for some other legitimate purpose. The government's reliance on *United States v. Jones,* 696 F.2d 479 (7th Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983), is misplaced. The officers there had warrants to arrest one of two persons who had registered in a motel room, and they thereby had authority to perform a sweep search after arresting the subject of the warrant who lived there. The Court of Appeals for the Seventh Circuit explained this exception to the rule of *Steagald:*

> When the suspect is in his own home, a determination of probable cause to arrest that suspect made by a detached magistrate is a sufficient shield from unreasonable searches.

*Id.* at 486. Here, in contrast, the St. Louis police officers did not apply for an arrest warrant for McIntosh or search warrant to look for Durham at the Shurns' residence where McIntosh was living. McIntosh was entitled to the protection the warrant requirement of the Fourth Amendment provides: a magistrate's impartial determination of probable cause focused either on the place he was living or a person living there. The police officers violated McIntosh's constitutional rights when they entered the home without such a warrant, consent, or exigent circumstances and seized his personal property.

The district court should have suppressed the proffered handgun as evidence used to convict McIntosh. We reverse the judgment of conviction and remand for further proceedings consistent with this decision.

REVERSED AND REMANDED.