# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3679

_____

United States of America,                    *
                                              *
            Appellee,                         *
                                              *
      v.                                      *
                                              *
Jaime Lamon Esquivel,                         *
                                              *
            Appellant.                        *


_____

No. 06-3681

_____

Appeals from the United States
District Court for the
District of Nebraska.

United States of America,                    *
                                              *
            Appellee,                         *
                                              *
      v.                                      *
                                              *
Ricardo Esquivel, Jr.,                        *
                                              *
            Appellant.                        *


Submitted: April 10, 2007
Filed: November 19, 2007

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following the district court's[1] denial of their motions to suppress evidence, Jaime Esquivel (Jaime) and Ricardo Esquivel, Jr. (Ricardo) pled guilty to possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1), reserving their right to appeal the suppression ruling. From the denial of their motions to suppress, Jaime and Ricardo appeal. Their appeals are consolidated. We affirm.

I.

On January 20, 2006, Nebraska State Trooper Jeff Roby stopped a vehicle driven by Jaime because the vehicle had no license plates and the trooper could not observe a temporary registration permit or in-transit sticker on the vehicle. At the time of the stop, Ruben Nunez and Ricardo were passengers in the vehicle. When the trooper approached the vehicle, he asked to see Jaime's driver's license and the vehicle registration. While Jaime was retrieving the requested documentation, Trooper Roby noticed a document or "sticker" affixed to the bottom right side of the inside of the windshield, which was later identified as a valid Nevada temporary vehicle registration permit with an expiration date of January 29, 2006. Trooper Roby testified that immediately after his initial look at the document, he believed the document affixed to the passenger side windshield was issued from the Nevada Department of Motor Vehicles. Jaime then gave Trooper Roby his California driver's license and the rental documentation for the vehicle. The rental documentation revealed that the vehicle was rented in Las Vegas, Nevada, by Nunez. Jaime was listed as an authorized additional driver on the rental agreement. Trooper Roby explained that he had stopped the vehicle because the vehicle had no license plates.

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendations of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

He stated that he would have to take a look at the "sticker" to see if it was expired "or what the story is with that."[2]

After examining the rental documentation for the date, make, model, VIN number and other identifying information, Trooper Roby directed Jaime to the front passenger seat of his patrol car to issue a written warning and to further inspect the rental documentation. While he reviewed the paperwork, ran Jaime's driver's license and performed a criminal history check, Trooper Roby conversed with Jaime about his travel activities and plans. Jaime told Trooper Roby that he and his two nephews, Ricardo and Nunez, were on their way to a family wedding in Chicago. He said they traveled from El Centro, California, to Las Vegas, Nevada, in Nunez's truck. Jaime stated that the three gambled at the Queen's Casino, spent the night in Las Vegas, and rented the vehicle in Las Vegas.

Dispatch then advised Trooper Roby that Jaime's driver's license was valid and he had no active warrants. However, dispatch also advised Trooper Roby that Jaime had a history of an immigration violation charge, several marijuana smuggling charges, an assault charge and a drunk driving conviction. Trooper Roby advised Jaime that the permit on the windshield looked "okay." Roby further explained that, although it was not Jaime's fault, the vehicle needed license plates. Trooper Roby then left Jaime in the patrol car and spoke with the passengers, Ricardo and Nunez, obtained their driver's license and identification cards, and discussed the details of their trip with them. The passengers provided Trooper Roby with a different account of the trip than did Jaime. For example, the passengers said that they gambled only briefly while in Las Vegas, did not spend the night in Las Vegas, and named a

---

[2]Government Exhibit One introduced at the suppression hearing is the videotape of the stop and ensuing events recorded from the dash mounted camera on Roby's patrol car. The videotape includes audio of the interchange between Roby and the appellants.

different casino as the location of their gambling activities. Trooper Roby then returned to his vehicle and conducted a driver's license and warrant check on the two passengers. While waiting for dispatch to provide the requested information on the passengers, Trooper Roby began filling out a written warning and asked Jaime detailed questions about his travel plans, the exact date of the wedding, and his criminal history. Jaime told the officer about his past driving under the influence and marijuana smuggling charges. While the passengers said that the wedding was on Friday, Jaime told the trooper that the wedding was on Saturday.

When he was advised that the passengers had no outstanding warrants, Trooper Roby completed the written warning, asked Jaime to sign for the document and handed the warning ticket to Jaime, telling him that they "were done with the traffic stop" and to have a safe trip. Trooper Roby then asked Jaime if he would agree to answer further questions, to which Jaime agreed. At that point, the trooper asked Jaime if there was marijuana, methamphetamine, or cocaine in the car. Jaime denied that such substances were in the vehicle. The trooper then asked for and received verbal consent to search the vehicle from Jaime, Ricardo, and Nunez. Other officers then arrived to assist Trooper Roby. One of the other officers, Sergeant Duis, arrived with his K-9 partner and performed a walk-around search on the exterior of the vehicle. The K-9 alerted at the rear of the vehicle. The officers then began a physical search of the vehicle and found heroin in the shape of shoe insoles inside the car. When the defendants were placed under arrest, heroin was also located inside the shoes they were wearing. After being Mirandized, Jaime and Ricardo stated that they were transporting five pairs of shoe insoles containing heroin. Jaime, Ricardo and Nunez each wore a pair of the insoles and the remaining two pairs of insoles, which also contained heroin, were hidden in the rear of the car.

Jaime, Ricardo, and Nunez were indicted for possession with intent to distribute heroin. 21 U.S.C. § 841(a)(1). The defendants jointly moved to suppress the

-4-

evidence seized from the vehicle in which they were traveling. Following a suppression hearing, the magistrate judge recommended that the motion be denied, concluding that: the traffic stop was valid; that the officers had reasonable suspicion to warrant extending the stop; that Jaime and Ricardo voluntarily consented to the search; and, such voluntary consent purged the taint of any illegal detention. This recommendation was adopted by the district court. The defendants conditionally entered pleas of guilty subject to this appeal of the denial of the suppression motion.

II.

Jaime and Ricardo concede the validity of the initial traffic stop of the vehicle for no license plates and no visible temporary registration permit. See United States v. Bueno, 443 F.3d 1017, 1024-25 (8th Cir. 2006) (neither mistake of law or fact render traffic stop illegal as long as actions of officer were objectively reasonable under the circumstances; because lack of license plate or temporary registration would have constituted violation of state law, officers had reasonable suspicion to stop the vehicle); United States v. Ehrmann, 421 F.3d 774, 780 (8th Cir. 2005), cert. denied, 126 S. Ct. 1099 (2006) (traffic violations, however minor, create probable cause to stop vehicle). However, the appellants argue that: (1) the investigation which followed the traffic stop was excessive in length and scope, and (2) the appellants' consent to a search of the vehicle did not "purge the taint of the illegal detention."

In an appeal of a denial of a motion to suppress evidence, the district court's factual determinations are reviewed for clear error, and we review de novo its legal conclusions as to whether the Fourth Amendment has been violated. United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007). "Guided by this standard, we must affirm the district court's decision on a suppression motion unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction

that a mistake has been made." Id. (alteration in original) (quoting United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004)). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a conclusion. See United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002).

Appellants concede that the detention was legitimate until Trooper Roby received the radio message that Jaime's driver's license check was clear. At that point, they argue, Trooper Roby's detention of Jaime and Ricardo became illegal. After carefully reviewing the video and audio recording of the traffic stop and the transcript of the suppression hearing, we find it unnecessary to address the appellants' contention that the traffic stop was excessive in length and scope, because even assuming a Fourth Amendment violation, the appellants' consents to search the vehicle validated the subsequent search. See United States v. Grajeda, 497 F.3d 879, 882 (8th Cir. 2007) (unnecessary to address whether the act amounted to an illegal search because, even assuming a Fourth Amendment violation, subsequent search was validated by intervening voluntary consent); United States v. Kreisel, 210 F.3d 868, 869 (8th Cir. 2000) (consent was sufficiently an act of free will to purge taint of detention). "An illegal detention is only the start, and not the end, of our fourth amendment analysis, for the evidence seized from [appellants and their vehicle] need not be suppressed if [their] voluntary consent provided an independent basis for the search . . . ." United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001).

After returning the paperwork and advising Jaime that the traffic stop was complete, Trooper Roby asked Jaime if he would agree to answer additional questions. Jaime agreed. There is no indication in the record that this post-stop encounter was anything other than consensual. See United States v. Salazar, 454 F.3d 843, 847 (8th Cir. 2006) (no indication that the post-stop encounter was a seizure rather than consensual); United States v. Santos-Garcia, 313 F.3d 1073, 1078 (8th Cir. 2002) (during post-stop consensual encounter, officer may, without reasonable

suspicion, ask further questions unrelated to the traffic stop). Further, we find that the district court did not clearly err in finding that Jaime, Ricardo and Nunez voluntarily consented to the search of the vehicle during the post-stop consensual encounter.

> A defendant's voluntary consent to be searched is an exception to the Fourth Amendment's warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). A court determines whether consent is voluntary under the totality of the circumstances. United States v. Gipp, 147 F.3d 680, 685 (8th Cir. 1998). The Government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual. United States v. Cedano-Medina, 366 F.3d 682, 684-85 (8th Cir. 2004). In evaluating the reasonableness of the officer's belief, we consider the characteristics of the person consenting, "including the party's age, intelligence and education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects." United States v. Almendares, 397 F.3d 653, 660 (8th Cir. 2005). We also consider the environment in which the alleged consent took place, "specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently . . . as the search occurred." United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001).

United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005).

As noted above, the duration of the stop which preceded the consensual post-stop encounter and consent to search was brief and the majority of the trooper's investigation was lawful. The appellants spoke and understood the English language. At the time of his arrest, Jaime was 44 years old and had a ninth grade education.

Although Jaime was born in Mexico, he had become a United States citizen. Ricardo was born in Los Angeles, California, was 30 years of age and had a high school education. Further, there is no evidence that Trooper Roby used coercion to obtain consent to search or to compel the appellants to answer questions. Id. at 700-701 (the totality of the circumstances establish that the officers reasonably believed consent to search was voluntary where 19-year-old Hispanic suspect understood English, was not under influence of drugs or alcohol, was only detained short time, was not threatened or intimidated by police, and was described by officers as very cooperative). Accordingly, the district court did not clearly err in finding the government proved by a preponderance of the evidence that appellants consented freely and without coercion. See United States v. Becker, 333 F.3d 858, 861 (8th Cir. 2003) (the government has the burden of proving that the consent to search was freely given and without coercion).

Although the consent to search was voluntary, "that is not the end of our inquiry." United States v. Becker, 333 F.3d 858, 861 (8th Cir. 2003). Because voluntary consent to search, "which was preceded by an illegal police action, does not automatically purge the taint of an illegal detention," we must next determine if the voluntary consent was an "independent, lawful cause" of the discovery of the heroin in the vehicle and the appellants' shoes. Id. at 862. In order to make that determination, we must consider the following factors: 1) the temporal proximity between the illegal search and the consent; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the official misconduct. See Brown v. Illinois, 422 U.S. 590, 603-604 (1975).

When assessing the temporal proximity factor, we must focus on the time from which the stop became illegal to the time of the consent. "[T]his court has found consent given a short time after the stop [was] sufficient to purge the taint if other circumstances indicate the consent was sufficiently an act of free will." United States v. Herrera-Gonzalez, 474 F.3d 1105, 1112 (8th Cir. 2007); see United States v.

Palacios-Suarez, 149 F.3d 770, 772 (8th Cir. 1998) (holding that consent was sufficiently an act of free will to purge the taint of the initial stop where the officer asked the defendant several times if he could search the vehicle nine minutes after the initial stop); see also United States v. Ramos, 42 F.3d 1160, 1164 (8th Cir. 1994) (finding consent sufficient to purge the taint where the arrest and consent were "close in time").  As the district court noted, the appellants were not in custody or being detained when they consented.  A review of the video of the traffic stop reveals that 9 minutes and 35 seconds passed between the time the detention allegedly ceased being valid and the time the consents to search were obtained.   Next, Trooper Roby had already returned the rental paperwork, the warning ticket and Jaime's driver's license when Jaime consented to the search.  Although fairly close in time to the completion of Trooper Roby's check of Jaime's driver's license, which is the point that appellants contend the detention became illegal, the Trooper's announcement that the traffic stop was over and Jaime was free to leave was also an intervening circumstance between the presumed illegal detention and the consent.  Lastly, the district court found no evidence of official misconduct on the part of the trooper.  A thorough review of the record reveals that substantial evidence supports this finding. "The totality of the circumstances indicate that [appellants'] consent[s] [were] . . . act[s] of free will and . . .  independent intervening cause[s] of the discovery of contraband, sufficient to cure the taint of any prior Fourth Amendment violation." Grajeda, 497 F.3d at 883.  Therefore, the district court did not err in finding that the consent to search given by Jaime, Ricardo and Nunez purged the taint of any portion of the stop which may have been illegal.

## III.

Accordingly, we affirm the judgment of the district court.

———————————