# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1347

_____

| | | |
|---|---|---|
| United States of America | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| $545,855.00 in United States Currency; | * | |
| $14,800.00 in United States Currency | * | [UNPUBLISHED] |
| | * | |
| Defendants, | * | |
| | * | |
| Ellsworth C. Jackson | * | |
| | * | |
| Claimant/Appellant. | * | |

_____

Submitted: November 16, 2007
Filed: May 13, 2008

_____

Before RILEY, TASHIMA,[1] and SMITH, Circuit Judges.

_____

PER CURIAM.

_____

[1]The Honorable A. Wallace Tashima, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Ellsworth C. Jackson appeals the district court's[2] denial of his motion to suppress currency found during a search of his motorcoach during a traffic stop.[3] Because Jackson consented to the search, the taint from any preceding Fourth Amendment violation was purged. Accordingly, we affirm.

Arkansas State Police Trooper Kyle Drown was patrolling Interstate 40 when he observed Jackson's motorcoach cross the fog line and then weave between two lanes. After Drown pulled the motorcoach over, Jackson left the motorcoach and walked to Drown's patrol car. Drown noted that Jackson looked nervous as he gave him his license and registration. The vehicle was registered to Entertainment Coaches of America, a fleet of vehicles Drown knew had been involved in prior seizures of drugs and currency.

Jackson told Drown that there were two passengers in the motorcoach, at which time Drown entered the motorcoach to get their identifications. While in the vehicle, Drown found that there were actually three passengers. After questioning them and taking their identifications, Drown ran identification checks on all four individuals. Because one of the passengers had an outstanding arrest warrant, Drown re-entered the motorcoach to verify that passenger's identity and arrest him. Drown later entered the motorcoach a third time to get social security numbers for the remaining two passengers.

Drown was suspicious of Jackson and the contents of the motorcoach because Jackson continued to act nervous, told Drown he had made a quick cross-country trip, and said that he had been arrested for "pills" once when his criminal history was much

---

[2]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

[3]Jackson filed the motion to suppress after the government brought a civil forfeiture action against the currency pursuant to 21 U.S.C. § 881.

more extensive. Fifty-five minutes after the initial stop and seventeen minutes after the most recent motorcoach entry, Drown returned Jackson's license and issued him a warning for improper lane use. Drown then asked Jackson if the motorcoach contained any illegal substances or large sums of currency. Jackson replied that he had $15,000 in cash. Drown stated, "It'd be okay if we went ahead and searched the vehicle and all contents," to which Jackson replied, "Please, go ahead." During Drown's search of the motorcoach, he discovered $14,800 in a bag and $545,855 hidden under two small tables.

In his motion to suppress, Jackson contended that the first three searches violated the Fourth Amendment, his consent to the search was not voluntary, and the final search was tainted by the prior violations. The district court denied the motion, holding: (1) the first three searches did not violate the Fourth Amendment; (2) the consent was voluntary; and (3) in the alternative, Drown had probable cause to search the motorcoach. Jackson timely appeals.

When reviewing a district court's denial of a motion to suppress, "the district court's factual determinations are reviewed for clear error, and we review de novo its legal conclusions as to whether the Fourth Amendment has been violated." United States v. Esquivel, 507 F.3d 1154, 1158 (8th Cir. 2007) (citing United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007)). Furthermore, "'we may affirm a district court's judgment on any basis supported by the record.'" United States v. Levine, 477 F.3d 596, 601 (8th Cir. 2007) (quoting United States v. Pierson, 219 F.3d 803, 807 (8th Cir. 2000)). Jackson contends that the first three searches violated the Fourth Amendment. We need not reach this question, however, because even if we assume that the first three searches were illegal, Jackson's consent validated the final search. See Esquivel, 507 F.3d at 1158 (declining to address defendants' allegation that a traffic stop violated the Fourth Amendment when the subsequent search was validated by defendants' consent).

The district court's finding that Jackson voluntarily consented to the search is a factual finding we review for clear error. United States v. Yousif, 308 F.3d 820, 830 (8th Cir. 2002) (citing United States v. Moreno, 280 F.3d 898, 900 (8th Cir. 2002)). "Consent is voluntary 'if it was the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied.'" United States v. Lakoskey, 462 F.3d 965, 973 (8th Cir. 2006) (quoting United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990)). After reviewing the video of the traffic stop and the evidence adduced at the suppression hearing, we conclude that the district court's finding was not clearly erroneous. There is no evidence of intimidation or threat. While Drown requested consent with a declaratory statement, Jackson's response of "Please, go ahead" connotes consent, not coercion.

In the presence of prior Fourth Amendment violations, however, our review does not end with the voluntariness of the consent. Id. at 975. Rather, assuming a prior violation, we must determine whether the consent purged the taint from the assumed Fourth Amendment violation. Id. We review the issue of taint de novo. United States v. Herrera-Gonzalez, 474 F.3d 1105, 1111 (8th Cir. 2007) (citing United States v. Simpson, 439 F.3d 490, 494-95 (8th Cir. 2006)). When determining whether the consent search was sufficiently attenuated from any Fourth Amendment violation, we consider the following factors: "(1) the giving of Miranda warnings, (2) the temporal proximity of the illegal entry and the alleged consent, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." Lakoskey, 462 F.3d at 975 (quoting United States v. Snype, 441 F.3d 119, 134 (2d Cir. 2006)) (internal quotation marks omitted).

After weighing these factors, we conclude that the consent was not tainted by any Fourth Amendment violation. Drown did not Mirandize Jackson, but the remaining factors show that the consent was sufficiently attenuated from the prior entries into the motorcoach. Jackson gave his consent fifty-five minutes after the first entry and seventeen minutes after the third entry. See Herrera-Gonzalez, 474 F.3d at

1112 ("While 10 minutes does not in itself suggest sufficient attenuation to purge the taint of the stop, neither does it compel the conclusion that the attenuation was insufficient."). Drown returned Jackson's license and issued the warning prior to requesting consent. Finally, any Fourth Amendment violation, if one existed at all, was not flagrant given the concerns for officer safety inherent in stopping a large motorcoach with limited interior visibility.

We affirm the judgment of the district court.

_____