# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1230

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| James Edward Greer, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 23, 2009
Filed: June 11, 2010

_____

Before COLLOTON and BENTON, Circuit Judges, and PIERSOL,[1] District Judge.

_____

COLLOTON, Circuit Judge.

James Greer was convicted of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court[2] sentenced him to 188 months' imprisonment. Greer appeals the district court's denial of his

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

motion to suppress evidence, the sufficiency of the evidence to support his conviction, and the district court's procedural and substantive decisions at sentencing. We affirm.

## I.

On January 27, 2008, Greer was in a house that he rented at 3322 North 44th Avenue in Omaha. Police officers Joseph Baudler and Nicholas Muller approached the door of an enclosed porch at the front of the house. They did so after receiving information that a fugitive for whom they possessed misdemeanor arrest warrants was in the house, and after hearing that Greer and his brother allegedly were selling narcotics from the residence. The officers noticed the smell of burnt marijuana as they neared the porch. They then knocked on the storm door to the porch. Greer opened an interior door that led from the house to the porch and stepped into the enclosed porch area.

Greer then opened another solid door that opened from the porch to the storm door where the officers had knocked. The officers opened the storm door, and Greer stepped back. The officers entered the porch, and Baudler explained to Greer that he was looking for a fugitive. At that point, from his vantage point on the porch, Baudler could see through the open doorway into the house. He recognized the fugitive, Annette Smiley, seated on a couch. Baudler and Muller then entered the residence and placed Smiley under arrest.

After Smiley was arrested, other officers secured the residence by bringing all six or seven persons in the house into the living room. Baudler and Muller observed a burnt marijuana cigarette in an ashtray in the living room. After three or four minutes, Baudler took Greer to another room to speak privately. Baudler told Greer that officers smelled marijuana, and asked Greer whether he would consent to police searching the residence. After speaking with his brother, who arrived shortly after the officers entered, Greer asked whether police would seek a search warrant if he

declined to consent, and Baudler said that they would. Greer then consented orally to a search of the house. He also signed a written consent form, which the officers misplaced, and a second form to replace the first one.

During a search of a bedroom, Muller and Sergeant Thomas Shaffer found a .38 caliber revolver in a black purse in the pocket of a coat in the closet. The officers also found a phone bill addressed to Greer and a money order payable to Greer in the purse. In the pocket of a different jacket in the same closet, Shaffer found a bag with fourteen rounds of .38 caliber ammunition. In a third coat, Shaffer located ten hydrocodone pills. In a dresser, Shaffer discovered a case holding eighty-nine rounds of .22 caliber ammunition and a shotgun shell. Muller found four letters addressed to Greer atop the dresser. Greer later admitted that he had obtained the hydrocodone from a friend.

The district court, accepting the recommendation of a magistrate judge, denied Greer's motion to suppress evidence. The case proceeded to trial, and a jury found Greer guilty of unlawful possession of the firearm. At sentencing, the district court found that Greer was an armed career criminal within the meaning of 18 U.S.C. § 924(e), because he had sustained three prior convictions for a "violent felony." The court determined an advisory guideline range of 188 to 235 months' imprisonment, and sentenced Greer to 188 months.

II.

Greer argues that the police officers violated the Fourth Amendment when they entered first the porch, and then the house, on the date of his arrest. As a result, he contends, the district court should have suppressed the firearm and other evidence seized from the house.

The entry onto the porch was not unconstitutional. The district court found that when Greer opened the door to the porch and stepped back, he impliedly invited the officers to enter. This finding that Greer consented to the porch entry was not clearly erroneous. *See United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975).

The entry to the house is problematic. The government does not contend that Greer consented to the officers moving from the porch to the house, that exigent circumstances justified the second entry, or that the fugitive resided in the house. Without consent or exigency, or an arrest warrant for a resident, the police generally must have a search warrant to enter a home. *Payton v. New York*, 445 U.S. 573 (1980). Probable cause that a fugitive was located within the house did not justify entry without a warrant. *Steagald v. United States*, 451 U.S. 204, 205-06 (1981), holds that a search warrant is required to enter a home to arrest a non-resident fugitive, even when there is probable cause to believe that the fugitive is located within the home and the police have an arrest warrant for the fugitive. As this court said in *United States v. McIntosh*, 857 F.2d 466, 468 (8th Cir. 1988): "The Court . . . carefully distinguished entry with an arrest warrant for a person living in the home from entry with an arrest warrant for a person not living there. The former is constitutionally permissible, the latter an unconstitutional invasion of the privacy of the home in the absence of a warrant to search that home."

The magistrate judge seemed to think it made a difference that the door from the porch to the house was open rather than closed: "Had the door been closed, it would have been an altogether different matter because this was not the residence of Miss Smiley. And they would've probably needed a warrant . . . to effect that arrest." Hrg. Tr. 101. But absent a finding of consent, which is not urged, or a suspect standing in the doorway, *cf. United States v. Santana*, 427 U.S. 38, 42 (1976), the status of the door is not determinative. In *Payton* itself, the officers saw the suspect through an open door, crossed the threshold, and arrested him, 445 U.S. at 578, but the Court held that "the Fourth Amendment has drawn a firm line at the entrance to

-4-

the house." *Id*. at 590. The government says it is significant that the police had "first hand knowledge" that Smiley was in the house, not merely second-hand probable cause, but there is no certitude exception to the warrant requirement. The entry to the home was unlawful.

Must the firearm and other evidence be suppressed? Greer consented to the search of the home, both orally and in writing. The district court found, correctly in our view, that Greer's consent to search was voluntary, but voluntary consent alone is not sufficient to avoid suppression based on the unlawful entry. *United States v. Lakoskey*, 462 F.3d 965, 975 (8th Cir. 2006). The government also must establish that the consent was an independent act of Greer's free will that purged the taint of the Fourth Amendment violation. *Id*.

If the evidence was not obtained by exploitation of the illegal entry, but rather by "'means sufficiently distinguishable to be purged of the primary taint,'" then it should not be excluded. *Brown v. Illinois*, 422 U.S. 590, 599 (1975) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)); *see United States v. Esquivel*, 507 F.3d 1154, 1160 (8th Cir. 2007); *United States v. Snype*, 441 F.3d 119, 134-35 (2d Cir. 2006). To determine whether Greer's consent was sufficient to purge the primary taint of the entry, we consider the giving of *Miranda* warnings where applicable, "[t]he temporal proximity" of the entry and the consent, "the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." *Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (alteration in original) (quoting *Brown*, 422 U.S. at 603-04).

The circumstances here demonstrate purgation of the taint. The Supreme Court has placed "particular" emphasis on the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 604. Those factors suggest that Greer's voluntary consent was an independent act of free will. The purpose of the unlawful entry was not to investigate Greer. The officers spotted a fugitive in the residence, and their

intrusion was aimed at apprehending her. The entry was not especially flagrant; the door to the residence was open, and the officers used no force to gain access. The officers smelled marijuana before going into the house, so the unlawful entry did not prompt the request to search.

Although there was not a long lapse of time between the entry and Greer's consent, there were important intervening circumstances. Greer's brother arrived on the scene and consulted with Greer about whether to consent to search. After Officer Baudler advised Greer that police would seek a search warrant if necessary, Greer gave oral consent, and he then signed two different written consent forms. While the officers did not recite *Miranda* warnings, the consent form advised Greer that he had a "right to deny the officer(s) permission to search [his] property," and Greer's brother even suggested that he would consult a lawyer. There were thus several opportunities for Greer to pause and reflect, to decline consent, or to revoke consent, but he granted permission to search and never withdrew it. Taken as a whole, this circumstantial evidence demonstrates that Greer's consent was an independent act of free will, sufficient to purge the taint that arose from the unlawful entry to arrest the fugitive Smiley. Accordingly, the district court did not err in denying Greer's motion to suppress.

III.

Greer next contends that there was insufficient evidence to establish beyond a reasonable doubt that he possessed the firearm found in the house. He points out that there was no fingerprint or DNA evidence connecting him to the gun, and says that the case was entirely circumstantial. Greer argues that testimony from police officers that the residence was a "flop house" or a "crack house" suggests that the gun may have belonged to a transient visitor rather than to Greer, and that others in the residence had an incentive to hide the gun after police knocked and announced their presence.

We conclude that the evidence supports the verdict. Greer rented the residence where police found the revolver. The gun was found in a purse inside a coat in a locked bedroom closet. Also in the purse was a phone bill addressed to Greer and a money order payable to Greer. Police found correspondence addressed to Greer on a dresser in the bedroom. In another coat in the same closet, police found hydrocodone that Greer admitted belonged to him. A reasonable jury could find that Greer possessed the firearm.

IV.

Greer argues that the district court erred by finding that he had sustained three prior convictions for violent felonies for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and that he should not have been subject to the fifteen-year statutory minimum sentence under § 924(e). The district court, however, elected to sentence Greer to a term of 188 months' imprisonment based on 18 U.S.C. § 3553(a). The court's sentencing decision was not constrained by the 180-month statutory minimum, and Greer therefore lacks standing to challenge the applicability of the statutory minimum. *United States v. Gray*, 577 F.3d 947, 950-51 (8th Cir. 2009).

Greer would have standing to argue that the district court erred by applying the statutory maximum sentence of life imprisonment under § 924(e), rather than the ten-year maximum that applies for a violation of 18 U.S.C. § 922(g) without the ACCA enhancement. *See* 18 U.S.C. § 924(a)(2). And he could raise a claim of procedural error under the advisory sentencing guidelines if the court mistakenly applied USSG § 4B1.4 based on armed career criminal status. Although Greer does not raise these points directly, they might be considered implicit in his argument, so we consider the merits of his challenge to § 924(e).

Greer admits that he sustained convictions for three prior violent felonies, but he collaterally attacks two of them, arguing that his guilty pleas did not comply with the constitutional safeguards set forth in *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). A defendant may not collaterally attack prior convictions used to enhance a sentence under the ACCA, however, unless he was denied the right to counsel. *Custis v. United States*, 511 U.S. 485, 487 (1994); *Moore v. United States*, 178 F.3d 994, 997 (8th Cir. 1999). Certified documents concerning each of the prior convictions showed that Greer was represented by counsel in each case. Therefore, the district court did not err in finding that Greer qualified for an enhanced sentence under the ACCA.

Finally, Greer argues that even if the statutory minimum sentence under the ACCA was 180 months' imprisonment, the district court's chosen sentence of 188 months was substantively unreasonable. The sentence was at the bottom of the advisory guideline range, and therefore presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Sicaros-Quintero*, 557 F.3d 579, 583 (8th Cir. 2009). Reviewing under a deferential abuse-of-discretion standard, *see Gall v. United States*, 552 U.S. 38, 51 (2007), we see no compelling reason that required the district court to select a sentence between 180 and 187 months' imprisonment, rather than 188 months.

\* \* \*

The judgment of the district court is affirmed.

_____