# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2824

_____

United States of America,

        Appellee,

v.

Alphonso Wade Barnum,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Southern District of Iowa.
\*
\*
\*

_____

Submitted: January 14, 2009
Filed: April 28, 2009

_____

Before BYE and GRUENDER, Circuit Judges, and KAYS,[1] District Judge.

_____

GRUENDER, Circuit Judge.

After police officers found a Titan .25 caliber semi-automatic handgun in his rental vehicle during a consensual search following a traffic stop, Alphonso Barnum was charged with being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Barnum moved to suppress the evidence that police seized, challenging the legality of the traffic stop and alleging that his consent to search his

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri, sitting by designation.

rental vehicle and his person was not voluntarily given. The district court[2] denied Barnum's motion. Barnum then entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. Barnum now appeals, and for the reasons discussed below, we affirm.

## I.    BACKGROUND

On the afternoon of July 23, 2007, Officer Jerry Hatler of the Bettendorf, Iowa Police Department drove through the parking lot of the Traveler Motel as part of his routine patrol. The Traveler Motel has a reputation among local law enforcement as a frequent site of illegal drug and prostitution activity. Officer Hatler cross-referenced the registrations of the vehicles parked in the lot against a list of outstanding warrants. One of these vehicles was a silver 2005 Dodge Stratus, registered to Kimberly Car City, an automobile repair shop in Davenport, Iowa. After checking all of the vehicles, Officer Hatler left the Traveler Motel parking lot and continued his normal patrol activities.

A few hours later, around 6:00 p.m., Officer Hatler was driving on Brown Street when he saw the same silver Dodge Stratus pull out of the Traveler Motel parking lot onto Brown Street. Officer Hatler followed the vehicle on Brown Street and then on 14th Street for about twenty seconds before he noticed that the vehicle's middle taillight failed to illuminate when the driver, Barnum, applied the vehicle's brakes, thereby violating Iowa Code § 321.387. *See id.* ("All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition . . . ."). Officer Hatler then initiated a traffic stop.

---

[2]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

Officer Hatler approached the stopped vehicle, asked Barnum for his license, and notified him of the vehicle's malfunctioning taillight. Barnum explained that he was not aware that the taillight was out because he did not own the vehicle; it was loaned to him by an automobile repair shop while his automobile was being repaired. Barnum gave Officer Hatler his license and the vehicle rental agreement, and Officer Hatler returned to his patrol cruiser to check the records of Barnum and his female passenger, Michelle Pugh. The check on Barnum revealed prior involvement with drugs and a conviction for possession of a firearm by a felon.

At this time, Officer Colin Ward arrived to back up Officer Hatler. Officer Hatler prepared a warning ticket for the taillight infraction and returned to Barnum's rental vehicle to give Barnum the warning and return his license and the rental agreement. Officer Hatler asked Barnum to step out of the vehicle to complete the warning ticket. Together they walked to the rear of the rental vehicle, where Barnum reviewed the warning and signed it. Officer Hatler then told Barnum that their business was done.

Before Barnum returned to his rental vehicle, Officer Hatler engaged Barnum in a conversation concerning his prior involvement with drugs, his conviction for possession of a firearm by a felon, his current business, and his church. During this conversation, which occurred approximately twelve to fifteen minutes after the initial traffic stop, Officer Hatler asked Barnum if there was anything illegal in the vehicle and if he could search it. Barnum agreed to the search. For safety reasons, Officer Hatler patted Barnum down for weapons prior to searching the vehicle. The pat-down revealed no weapons, and Officer Hatler asked if he could search Barnum's pockets. Barnum gave his permission, and Officer Hatler's search revealed a crack pipe and a motel room key. Officer Hatler placed Barnum under arrest and finished his search of Barnum's person, finding $305 in his shoe.

Officer Hatler held Barnum in the back of his patrol cruiser and asked a police dispatcher to send a female officer to conduct a pat-down of Pugh. After Officer Guffey arrived on the scene, Barnum volunteered that there was a gun in the rental vehicle that Barnum's wife had given to Pugh. Officer Ward retrieved a cocked and loaded Titan .25 caliber semi-automatic handgun from the vehicle's center console. Following this discovery, Officer Hatler read Barnum his *Miranda*[3] rights, and Officer Ward arrested Pugh.

A federal grand jury returned an indictment charging Barnum with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Barnum pled not guilty. Before trial, Barnum filed a motion to suppress his post-arrest, pre-*Miranda* statement concerning the handgun and the evidence seized from his person and his rental vehicle, claiming that Officer Hatler did not have probable cause for the traffic stop and that Barnum's consent to the searches was not voluntarily given. At the motion hearing, the Government presented the testimonies of Officers Hatler and Ward concerning the circumstances of the traffic stop, Barnum's consent to search, and the searches of his person and his rental vehicle. Barnum's attorney cross-examined Officers Hatler and Ward concerning the circumstances under which Officer Hatler secured Barnum's consent to search, the police department's practice of checking vehicles in the Traveler Motel parking lot, and the officers' explanations for the failure of their patrol-cruiser video cameras to record the traffic stop. Barnum also presented testimony that Kimberly Car City's maintenance records reflected no reported problems with the Dodge Stratus's center taillight either before or after the rental.

The district court denied Barnum's suppression motion, finding that Barnum voluntarily consented to the searches and that his consent sufficiently purged the taint of any potential Fourth Amendment violation arising from the allegedly illegal traffic

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

stop. Because Barnum's voluntary consent provided an independent justification for the searches, the district court refrained from deciding whether there was probable cause for the traffic stop. The district court also found that Barnum's post-arrest, pre-*Miranda* statement to Officer Hatler concerning the handgun was not the product of interrogation. Following the court's adverse ruling on his suppression motion, Barnum entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2). The district court sentenced Barnum to 36 months' imprisonment.

## II. DISCUSSION

Barnum appeals the district court's denial of his suppression motion, arguing that the court clearly erred in finding that he voluntarily consented to the search of his person and his rental vehicle and that the court erred in finding that his consent purged the taint of any potential Fourth Amendment violation arising from the allegedly illegal traffic stop.[4] "In an appeal of a denial of a motion to suppress evidence, the district court's factual determinations are reviewed for clear error, and we review de novo its legal conclusions as to whether the Fourth Amendment has been violated." *United States v. Esquivel*, 507 F.3d 1154, 1158 (8th Cir. 2007).

Where applicable, the judicially-created exclusionary rule to the Fourth Amendment "forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. ---, 129 S. Ct. 695, 699 (2009).[5] However, evidence subject to the exclusionary rule is still admissible if it is obtained through "an act of free will

---

[4]Barnum abandoned any claim concerning his post-arrest, pre-*Miranda* statement about the location of the handgun by failing to argue the issue in his opening brief to this court. *See United States v. Fischer*, 551 F.3d 751, 756 (8th Cir. 2008); *United States v. Aldaco*, 477 F.3d 1008, 1016 n.3 (8th Cir. 2007).

[5]In deciding this appeal, we will assume that the exclusionary rule applies. *See Herring*, 129 S. Ct. at 700 (noting "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies").

unaffected by the initial illegality." *Brown v. Illinois*, 422 U.S. 590, 603 (1975). Here, the Government argues that Barnum's voluntary consent to search his person and his rental vehicle was an act of free will that purged the taint of any alleged Fourth Amendment violation arising from the traffic stop. Because the purported act of free will is the defendant's consent to search, the Government must prove by a preponderance of the evidence that the defendant's consent to search was voluntary and that the defendant's consent was an act of free will sufficient to purge the taint of the Fourth Amendment violation. *Esquivel*, 507 F.3d at 1160 (citing *Brown*, 422 U.S. at 603-04); *see also United States v. Kreisel*, 210 F.3d 868, 869 (8th Cir. 2000). For the purposes of this inquiry, we assume that Officer Hatler violated the Fourth Amendment by effecting the traffic stop of Barnum's rental vehicle without probable cause. *See United States v. Grajeda*, 497 F.3d 879, 882 (8th Cir. 2007) (assuming the existence of a Fourth Amendment violation in considering whether a defendant's voluntary consent purged the taint of the alleged violation).

**A. Voluntary Consent to Search**

In *United States v. Esquivias*, we described our standard for deciding whether a defendant's consent to search is voluntary:

> A court determines whether consent is voluntary under the totality of the circumstances. The Government . . . must show that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual. In evaluating the reasonableness of the officer's belief, we consider the characteristics of the person consenting, including the party's age, intelligence and education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects. We also consider the environment in which the alleged consent took place, specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether

-6-

he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently as the search occurred.

416 F.3d 696, 700 (8th Cir. 2005) (internal citations, quotations and alterations omitted).

Barnum contends that the district court clearly erred in finding that his consent to the searches was voluntary for two reasons: (1) Officer Hatler was unreasonable in his belief that a reasonable person would have felt free to disregard Officer Hatler's request based on the presence of three police officers at the scene; and (2) Officer Hatler's request to search Barnum's rental vehicle was "loaded" in the sense that it was a compound question asked in a manner calculated to guarantee Barnum's consent. We disagree.

First, contrary to Barnum's argument, the record shows that only two officers, Officers Hatler and Ward, were present when Barnum consented to the searches. Officer Guffey did not arrive on the scene until after Barnum consented to the searches. We have held that the mere presence of "two to three officers being armed with holstered firearms," in the absence of evidence of threats or intimidation, does not negate a defendant's consent. *United States v. Va Lerie*, 424 F.3d 694, 710 (8th Cir. 2005); *see also United States v. Vera*, 457 F.3d 831, 835 (8th Cir. 2006) (holding that a police officer's mere presence without some "physical force or show of authority" does not establish that a reasonable person would not have felt free to disregard a police officer's search request). The district court found, and Barnum does not dispute, that "he was not threatened, physically intimidated or punished by the police." Because there is no evidence in the record showing that Officer Hatler or Officer Ward intimidated, threatened, or in any other way compelled Barnum to consent to the searches of his person and his rental vehicle, we reject Barnum's first contention.

-7-

Second, even if we were to accept Barnum's characterization of Officer Hatler's request to search Barnum's rental vehicle, we still would not find that the question guaranteed Barnum's consent. Barnum's "loaded" question theory is premised on a single piece of Officer Hatler's testimony concerning his request to search Barnum's rental vehicle: "I just asked him if there was anything illegal in the vehicle and if I could search it." According to Barnum, the question's compound phrasing placed him between Scylla and Charybdis, requiring him either to give consent or appear to be concealing contraband. However, Barnum's premise does not support the conclusion that the question's compound phrasing compelled Barnum to respond "yes." A simple answer of "no" to Officer Hatler's allegedly "loaded" question would have denied consent to the search and presumably terminated the encounter. *Cf. Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("[A] refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.").

In any event, Barnum's second contention also fails because the allegedly compound question pertained only to the search of Barnum's rental vehicle, not to the search of his person. After Barnum voluntarily consented to the search of his person, which revealed a crack pipe and $305 in cash, Officer Hatler placed Barnum under arrest. As a result, Officer Hatler could have properly searched Barnum's rental vehicle, without his consent, for further evidence relevant to the drug offense for which Barnum had been arrested. *See Arizona v. Gant*, 556 U.S. ---, No. 07-542, slip op. at 10 (Apr. 21, 2009) (concluding that police may "search a vehicle incident to a recent occupant's arrest" when "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or when "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle'" (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment))). Therefore, we reject Barnum's second contention.

Moreover, the record demonstrates that the personal and environmental factors set out in *Esquivias* support the district court's finding that Barnum's consent was

voluntary. At the time of the encounter, Barnum was thirty-nine years old and possessed some college education. *See United States v. Comstock*, 531 F.3d 667, 677 (8th Cir.) (noting that the defendant's status as an "adult, of apparently average intelligence" favored a finding that his consent was voluntarily given), *cert. denied*, 555 U.S. ---, 129 S. Ct. 590 (2008). Based on his previous arrests, we may infer that Barnum was aware of the rights afforded criminal suspects. *See United States v. Griffith*, 533 F.3d 979, 985 (8th Cir. 2008). Barnum was only detained for twelve to fifteen minutes before he gave his consent to the searches. *See United States v. Becker*, 333 F.3d 858, 861 (8th Cir. 2003) (holding that a thirty-minute detention before the defendant consented to the challenged search was "brief"). Officer Hatler did not threaten or intimidate Barnum and made no promises or misrepresentations to induce his consent. *See Griffith*, 533 F.3d at 985. Barnum was situated behind his rental vehicle on the side of the road in broad daylight when he gave the consent, and he was not in police custody. *See United States v. Flores*, 474 F.3d 1100, 1104 (8th Cir. 2007) (finding that a daytime, roadside setting was not unduly coercive). Additionally, Barnum did not object to the searches at any time and was cooperative throughout the encounter. *See Becker*, 333 F.3d at 861. Thus, the district court did not clearly err in finding that the totality of the circumstances demonstrated that Officer Hatler reasonably believed that Barnum voluntarily consented to the search of his person and his rental vehicle. *See Esquivias*, 416 F.3d at 700-01.

## B. Purging the Taint of the Allegedly Illegal Traffic Stop

"[A] voluntary consent to search, 'which was preceded by an illegal police action, does not automatically purge the taint of an illegal detention.'" *Esquivel*, 507 F.3d at 1160 (quoting *Becker*, 333 F.3d at 862). To purge the taint, the voluntary consent must be an independent, lawful cause of the search, as determined by the three factors discussed in *Brown v. Illinois*: (1) the temporal proximity between the Fourth Amendment violation and the grant of consent to search; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the officer's Fourth

Amendment violation. *See Brown*, 422 U.S. at 603-04; *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1111 (8th Cir. 2007).

Here, although the district court did not make specific findings concerning each *Brown* factor, we can only conclude that the district court found that the *Brown* factors favored the Government based on the court's citation to *United States v. Esquivel* and its conclusion that "the defendant's subsequent voluntary consent [to the searches] under these circumstances rendered the issue regarding the validity of the initial stop irrelevant." *See Esquivel*, 507 F.3d at 1158-60 (finding it unnecessary to address the validity of the traffic stop where the *Brown* factors demonstrated that the defendant's voluntary consent purged the taint of the alleged Fourth Amendment violation); *see also Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("Trial judges are presumed to know the law and to apply it in making their decisions."), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584, 609 (2002).[6] In reviewing such an implicit finding,[7] we will "uphold a district court's decision on a motion to suppress despite [a] lack of factual findings if, on review of the record, [we] find that 'any reasonable view of the

---

[6]Contrary to the dissent's assertion, the district court never erroneously "concluded *as a matter of law* that . . . it [was] unnecessary to make any factual findings concerning the disputed portions of the stop." *See post* at 14, 16, 17-19. Instead, the district court correctly concluded that a finding of fact concerning whether Officer Hatler had *probable cause* to enact the traffic stop was unnecessary if Barnum's voluntary consent purged the taint of any alleged Fourth Amendment violation. *United States v. Barnum*, No. 3:07-cr-0587, slip op. at 4 (S.D. Iowa Mar. 31, 2008) ("[s]ubsequent events demonstrate that the issues in this case do not depend in any way upon *the finding of probable cause to stop the vehicle*" (emphasis added)). In so doing, the district court did not conclude that findings of fact concerning the other disputed portions of the traffic stop—those related to the voluntariness of Barnum's consent or the purging the taint analysis—were unnecessary.

[7]We agree with the dissent that specific findings of fact concerning the *Brown* factors would have assisted our review, and we suggest that the better practice is for a district court to make and identify all findings of fact necessary to its legal conclusion. *See* Fed. R. Crim. P. 12(d).

-10-

evidence supports the district court's decision.'" *See United States v. Bloomfield*, 40 F.3d 910, 913-15 (8th Cir. 1994) (en banc) (alterations omitted) (quoting *United States v. Harley*, 990 F.2d 1340, 1341 (D.C. Cir. 1993)); *see also United States v. Cortez-Palomino*, 438 F.3d 910, 912 n.3 (8th Cir. 2006) (per curiam) (same).[8]

In considering the first *Brown* factor, the temporal proximity between the Fourth Amendment violation and the grant of consent to search, we recognize that "the closer this period, the more likely the defendant's consent was influenced by, or the product of, the police misconduct." *See United States v. Simpson*, 439 F.3d 490, 495 n.3 (8th Cir. 2006). Here, the record demonstrates that Barnum gave his consent twelve to fifteen minutes after the allegedly illegal traffic stop. This twelve to fifteen minute interval supports a finding that the taint of any illegality was purged. *See Esquivel*, 507 F.3d at 1160 (finding that a period of nine to ten minutes between "the time from which the stop became illegal to the time of the consent" suggested that the taint was purged); *United States v. Palacios-Suarez*, 149 F.3d 770, 773 (8th Cir. 1998) (finding that a nine-minute period between the start of the violation and the consent suggested that the taint was purged). Consequently, the first *Brown* factor favors the Government.

Under the second *Brown* factor, the presence of any intervening circumstances, we recognize that an intervening circumstance between the Fourth Amendment violation and the defendant's consent indicates that the consent was made of the defendant's free will and "that the [officer] was not attempting to exploit an illegal situation." *Grajeda*, 497 F.3d at 882 (quoting *United States v. Moreno*, 280 F.3d 898,

---

[8]Contrary to the dissent's assertion, we need not and do not make any factual determinations concerning the *Brown* factors. *See post* at 14. Rather, we are charged with reviewing the record to determine whether the court's legal conclusion—that Barnum's consent purged the taint of any alleged Fourth Amendment violation—is supported by "any reasonable view of the evidence." *See Bloomfield*, 40 F.3d at 914-15.

901 (8th Cir. 2002)).  Here, the record shows that Officer Hatler returned Barnum's license and vehicle rental agreement and told Barnum that the traffic stop was over before asking to search his person and vehicle.  Because this occurred after the allegedly illegal traffic stop but prior to Barnum's consent, we find that Officer Hatler's return of Barnum's paperwork and his declaration that the traffic stop was over constitute intervening circumstances.  *See Esquivel*, 507 F.3d at 1160 ("[T]he Trooper's announcement that the traffic stop was over and [the defendant] was free to leave was also an intervening circumstance between the presumed illegal detention and the consent."); *cf. United States v. Jenson*, 462 F.3d 399, 407 (5th Cir. 2006) ("[E]vidence that (a) [the defendant] knew he was free to leave or (b) that his license had been returned to him . . . might be viewed as intervening circumstances.").  Thus, the second *Brown* factor also favors the Government.

With respect to the third *Brown* factor, the purpose and flagrancy of the officer's Fourth Amendment violation, we recognize that a police officer's purposeful or flagrant misconduct may demonstrate a causal connection between the violation and the consent.  *See Brown*, 422 U.S. at 603-04.  A Fourth Amendment violation may be purposeful or flagrant under various circumstances, including where the violation "was investigatory in design and purpose and executed 'in the hope that something might turn up.'"  *Herrera-Gonzalez*, 474 F.3d at 1113 (quoting *Simpson*, 439 F.3d at 496).  Here, a reasonable view of Officer Hatler's testimony supports a finding that he did not act purposefully or flagrantly by initiating the allegedly illegal traffic stop.  According to his testimony, Officer Hatler initiated the traffic stop as part of his routine patrol, doing so only after he observed the rental vehicle's malfunctioning center taillight, a violation of Iowa Code § 321.387.  Assuming, then, that Officer Hatler's observation was objectively unreasonable,[9] a reasonable view of Officer

_____

[9]Our assumptions concerning the allegedly illegal traffic stop are limited to those necessary to establish a Fourth Amendment violation.  *See Grajeda*, 497 F.3d at 882.  Here, we need only assume that Officer Hatler's observation concerning the rental vehicle's taillight was objectively unreasonable to establish the Fourth

-12-

Hatler's testimony is that he initiated the stop because of an "unreasonable mistake of fact . . . [which] does not constitute the type of blatantly unconstitutional or flagrant behavior condemned in *Brown*." *See Simpson*, 439 F.3d at 496. Because a reasonable view of the evidence supports the district court's implicit finding, we need not choose between this view and Barnum's competing theory concerning the third *Brown* factor,[10] nor must we remand for an explicit finding of fact. *See Bloomfield*, 40 F.3d at 915 (holding that remand is unnecessary where the district court states its legal basis for denying the motion to suppress on the record and a reasonable view of the evidence supports its decision). Thus, the third *Brown* factor also favors the Government.

Because a reasonable view of the evidence demonstrates that the *Brown* factors favor the Government, we find that the district court did not err in its conclusion that Barnum's voluntary consent to the searches purged the taint of any Fourth Amendment violation.

## III. CONCLUSION

For the foregoing reasons, we affirm Barnum's conviction.

---

Amendment violation. *See Herrera-Gonzalez*, 474 F.3d at 1113. We need not and do not assume that Officer Hatler acted purposefully and flagrantly—that he knew the taillight was working or that he had any improper motive or malicious intent in initiating the traffic stop without probable cause. *See id.*

[10]Barnum argues that Officer Hatler acted purposefully and flagrantly by making an illegal traffic stop in the hope that a subsequent search would turn up illegal activity. Barnum bases his theory on Officer Hatler's testimony that he knew of the Traveler Motel's reputation for illegal activity, that he knew Barnum's rental vehicle had been parked at the Traveler Motel, that he initiated the traffic stop as soon as the rental vehicle pulled out of the Traveler Motel parking lot, and that his cruiser video camera failed to record the traffic stop.

BYE, Circuit Judge, dissenting.

I dissent from the majority's cavalier usurpation of the district court's authority to make evidentiary findings on contested issues of fact. Barnum specifically argued to the district court that there was no probable cause for his traffic stop because his center taillight was functioning properly, and Officer Hatler knew it was working properly yet stopped him anyway in the hope of uncovering criminal activity. The district court concluded *as a matter of law* that "[s]ubsequent events demonstrate that the issues in this case do not depend in any way upon the finding of probable cause to stop the vehicle." Thus, the district court found it unnecessary to make any factual findings concerning the disputed portions of the stop. As explained below, this conclusion of law is incorrect. Instead of correcting the district court's erroneous legal conclusion, the majority—apparently recognizing it does in fact matter whether Officer Hatler purposely fabricated a reason for stopping Barnum—determines that, if there was a Fourth Amendment violation, it was only because Officer Hatler made a reasonable mistake of fact. By doing so, the majority assesses the record, assumes the district court implicitly made a factual finding that it expressly stated it was not making, and makes factual determinations that should have been made by, and are solely within the province of, the district court.

I agree with the majority's conclusion that Barnum's consent was voluntary. Finding Barnum's consent was voluntary, however, "is not the end of our inquiry." *United States v. Esquivel*, 507 F.3d 1154, 1160 (8th Cir. 2007). "Because voluntary consent to search, which was preceded by an illegal police action, does not automatically purge the taint of an illegal detention, we must next determine if the voluntary consent was an independent, lawful cause of the discovery of the [incriminating evidence]." *Id.* (internal quotation marks omitted). To determine whether the consent was sufficiently attenuated from the illegal detention, we consider: "(1) the temporal proximity of his consent and the prior Fourth Amendment violation; (2) the presence of intervening circumstances; and (3) the purpose and

-14-

flagrancy of the official misconduct." *United States v. Becker*, 333 F.3d 858, 862 (8th Cir. 2003). Of these, "the purpose and flagrancy of the official misconduct is 'the most important factor because it is directly tied to the purpose of the exclusionary rule–deterring police misconduct.'" *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1111 (8th Cir. 2007) (quoting *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006)).

We have "found purposeful and flagrant conduct where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up." *Simpson*, 439 F.3d 490, 496 (8th Cir. 2006). The majority correctly notes that we must presume Barnum's center taillight was functioning properly. If we assume the taillight was working, there are two possible scenarios concerning the traffic stop: either Officer Hatler mistakenly concluded the taillight was malfunctioning, or he in fact knew it was working properly. I agree with the majority that if it is the former, then Officer Hatler's unreasonable mistake of fact "does not constitute the type of blatantly unconstitutional or flagrant behavior condemned in *Brown*." *Ante* at 13.[11]

If, however, Officer Hatler was aware the taillight was functioning properly (or never bothered to look at the taillight) before stopping Barnum, then this is precisely the type of purposeful and flagrant misconduct that taints Barnum's subsequent consent to search. If Officer Hatler simply fabricated a reason for stopping Barnum, then the impropriety of his misconduct would have been obvious, and he would have known such conduct was unconstitutional. Moreover, there would have been no

---

[11]It is worth noting there is no evidence to explain how, if the taillight was functioning properly, Officer Hatler could have mistakenly concluded it was broke during the twenty seconds in which he was following directly behind Barnum's vehicle.

purpose for fabricating a reason to stop Barnum other than to hope something might turn up. To rule otherwise would allow police officers to fabricate reasons for stopping motorists so long as the officers inform the suspects that the fabricated purpose of the stop is complete before obtaining their consent. If police officers stop motorists for reasons they know to be false, then those officers are engaging in conduct they know to be unconstitutional. Such a blatant disregard of constitutional rights taints any subsequent consent to search the officers may receive.

Therefore, the district court incorrectly concluded as a matter of law that the circumstances of the stop were immaterial to Barnum's motion to suppress. To the contrary, the circumstances of the stop were critical to ruling on the motion to suppress. Instead of correcting the legal error, recognizing the need for further findings of fact, and remanding to the district court, the majority engages in its own assessment of the evidence based upon a "reasonable view of Officer Hatler's testimony." *Ante* at 13. Even more remarkable, the majority—in a footnote— constructs an entirely new and legally unsupported rule in holding that our assumptions "are limited to those necessary to establish a Fourth Amendment violation" such that we "need not and do not assume that Officer Hatler acted purposefully and flagrantly—that he knew the taillight was working or that he had any improper motive or malicious intent in initiating the traffic stop without probable cause." *Ante* at 13 n.9. The majority claims that, when a district court presumes a Fourth Amendment violation but fails to make any findings concerning the nature of the violation, this Court—if the specifics surrounding the violation are in fact relevant—will simply assume the least culpable conduct possible of violating the constitution.

If the majority is relying on our statement in *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc), that we will affirm in the absence of express factual findings so long as "any reasonable view of the evidence supports the district court's decision," our subsequent cases have rejected the majority's application of this

-16-

principle to the present case. The principle enunciated in *Bloomfield* generally applies when a district court correctly articulates the law and reaches a result such that certain factual findings are implicit in the lower court's holding.[12]  For example, when the district court correctly articulates that the legal principle governing a motion to suppress is the existence of probable cause, and denies the motion to suppress without making factual findings, we can conclude the district court implicitly found probable cause, and we need not remand for express factual findings so long as any reasonable view of the evidence supports a finding of probable cause.

If, however, the district court reaches an *erroneous legal conclusion* that it believes obviates the need for relevant factual determinations, we must correct the legal error and remand for further proceedings.   In such cases, the "absence of an explicit factual finding . . . precludes us from resolving the appeal at this juncture." *United States v. Khabeer*, 410 F.3d 477, 483 (8th Cir. 2005).  The majority avoids this logic by stating it is simply "reviewing the record to determine whether the district court's legal conclusion—that Barnum's consent purged the taint of any alleged Fourth Amendment violation—is supported by any reasonable view of the evidence." *Ante* at 11 n.8 (internal quotation marks and citation omitted).  The majority, however, makes no mention of the district court's preceding legal conclusion that "[s]ubsequent events demonstrate that the issues in this case do not depend in any way upon the

---

[12]Notably, the district court in *Bloomfield* made some factual findings in favor of the government based on the police officer's testimony, which indicated the court treated the officer's testimony as credible.  *Bloomfield*, 40 F.3d at 915.  In this case, the district court did not make any factual findings from which we can presume the court found any portion of Officer's Hatler's testimony to be credible.  It is entirely possible the court found Officer Hatler's testimony to be false, but still denied the motion based on its determination that the circumstances of the stop were irrelevant; as previously explained, such an interpretation of the law would be wrong.

-17-

finding of probable cause to stop the vehicle."[13]  As discussed, this legal conclusion is incorrect.  The majority ignores this erroneous statement of the law, and instead presumes that the unmade necessary factual findings—those the district court expressly stated it was not making—were implicitly determined in favor of the government.  In doing so, the majority fails to heed the Supreme Court's admonition that "it is the function of the District Court rather than the Court of Appeals to determine the facts."  *Murray v. United States*, 487 U.S. 553, 543 (1988).

Because the district court's result was premised solely on an erroneous legal conclusion, we should not scour an undeveloped record for any reasonable view of the evidence to support the district court's result.  *Bloomfield* is meant to apply when "the trial court omits a finding apparent on the face of the record, or when, under any possible view of the record, the district court could have reached but one result."  *Bloomfield*, 40 F.3d at 914 (quoting *United States v. Williams*, 951 F.2d 1287, 1290-91 (D.C. Cir. 1991)).  Had the district court correctly recognized that Barnum's motion to suppress should be granted if Officer Hatler fabricated a reason for initiating the traffic stop, but denied his motion to suppress without making any findings concerning the stop, then we could presume the court implicitly determined the facts in favor of the government.

In this case, however, the district court's erroneous legal conclusion precludes application of *Bloomfield* and requires a remand to the district court.  It defies logic for the majority to assume the district court implicitly made a specific factual finding

_____

[13]The majority claims this statement simply means the district court correctly concluded that a finding of probable cause was unnecessary if Barnum's consent purged the taint of any Fourth Amendment violation.  *Ante* at 10 n.6.  Of course, this ignores the fact that whether Barnum's consent purged the taint of the violation was *dependent upon* the finding of probable cause; if Officer Hatler knew there was no probable cause, then Barnum's consent could not have purged the constitutional violation.

concerning Officer Hatler's observations when the district court expressly stated—because of an incorrect legal conclusion— that it *was not* making any findings in that regard.   It is one thing to apply *Bloomfield* to facts the court must have implicitly made, it is another thing entirely to apply *Bloomfield* to facts the court expressly declined to make. While doing so is a convenient method of pretending the district court's erroneous legal conclusion had no effect on the outcome, convenience is no substitute for rigorous analysis and a just result.

Moreover, the majority, in assessing the evidence, incorrectly implies Barnum's theory lacks support in the record.  Barnum presented maintenance records reflecting no reported problems with the taillight either *before or after* the traffic stop in question.  In addition, employees of the service center testified it is common practice to check the taillight and to note any malfunction or necessary repairs on the service records for that vehicle.  Furthermore, Officer Hatler had already come across Barnum's vehicle in the parking lot of a hotel known as a frequent site of criminal activity, thereby increasing his motivation for stopping Barnum in the hope of uncovering criminal activity.  In contrast, the only evidence the taillight was malfunctioning at the time of the stop was Officer Hatler's testimony.  In light of this evidence, the district court could conclude the taillight was working properly at the time of the stop.  If it determines the light was working properly, the district court could also conclude Officer Hatler never believed the taillight was malfunctioning. Officer Hatler followed directly behind Barnum's vehicle for twenty seconds, and it is hard to see how Officer Hatler could have mistakenly believed the taillight was not working properly.  While the majority may have such faith in the sanctity of police officers to find such a scenario impossible as a matter of law, I believe the district court should resolve this contested factual issue.  It is not our responsibility to determine which interpretation of the evidence is more reasonable. Rather, the district court should make its own factual findings relevant to Barnum's motion to suppress, which we can then review for clear error.

I also disagree with the majority's assessment of the temporal proximity factor. The majority states that Barnum gave his consent to search twelve to fifteen minutes after the allegedly illegal traffic stop. In doing so, the majority is calculating the time between when Officer Hatler first initiated the traffic stop and when Barnum gave his consent. This fails to recognize, however, that, if the traffic stop was unconstitutional, then the Fourth Amendment violation continued until the non-consensual portion of the encounter ended, i.e., when Officer Hatler returned Barnum's paperwork and informed him that the purpose of the stop was complete. If we are assessing the taint of the Fourth Amendment violation, logic dictates that we should consider the time period between when the Fourth Amendment violation ends and when the consent to search is given. By concluding otherwise, courts reward officers for prolonging unconstitutional conduct. Therefore, in assessing the temporal proximity between the Fourth Amendment violation and the consent to search, I believe we should consider the time period from the end of the constitutional violation, not the beginning.[14]

Accordingly, I dissent.

_____

_____

[14]To the extent our precedent states otherwise, *ante* at 11, I believe such a rule is illogical, unsound, and should be reconsidered.