BYE, Circuit Judge,
dissenting.
I believe the district court erred in denying Whisenton’s motion to suppress. I conclude Whisenton’s consent was insufficient to purge the taint of the agents’ illegal entry of his home. Therefore, I respectfully dissent.
*944 It is a basic principle of the Fourth Amendment that warrantless searches and seizures inside a home are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). “[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.” Id. Here, armed agents entered Whisenton’s home without a warrant and without consent. The agents prolonged their unlawful intrusion until they had convinced Whisenton to consent to a search. With that in mind, I will evaluate whether the taint of the agents’ constitutional violation was purged by following the same balancing test applied by the majority.
In considering the temporal proximity factor, the majority concludes fifteen minutes elapsed between the agents’ illegal entry into Whisenton’s home and Whisen-ton’s consent to search. It is true the illegal entry occurred approximately fifteen minutes before Whisenton consented to the search. During those intervening fifteen minutes, however, the agents illegally remained inside Whisenton’s home. Thus, I believe it was a continuing violation with no intervening time between the illegality and consent. As I have previously argued: “If we are assessing the taint of the Fourth Amendment violation, logic dictates that we should consider the time period between when the Fourth Amendment violation ends and when the consent to search is given. By concluding otherwise, courts reward officers for prolonging unconstitutional conduct.” United States v. Barnum, 564 F.3d 964, 977 (8th Cir.2009) (Bye, J., dissenting). I find this logic all the more compelling, considering the illegal search occurred within Whisenton’s home, which distinguishes this matter from the cases involving traffic stops relied upon by the majority. See Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (“In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office.”). Had the agents left Whisenton’s home and retreated to an area they were constitutionally permitted to be, the constitutional violation would have ended and the clock would have begun to run. Because the agents remained in the home, however, the violation continued and its temporal proximity to the consent given by Whisenton was immediate. Therefore, I believe this factor weighs in favor of Whi-senton.
In considering the presence of any intervening circumstances, the majority places great emphasis on the fact that Whisenton was permitted to smoke a cigarette after the agents illegally entered his home. However, the fact that Whisenton felt compelled to ask the armed agents for permission to smoke a cigarette in his own home suggests the agents’ actions had overborne his will. In essence, asking for permission to smoke in one’s own home is evidence the prolonged unlawful intrusion had a coercive effect on Whisenton. In my opinion, the more compelling fact is that armed agents remained in Whisenton’s home as he sat partially-clothed in their presence. Had the agents withdrawn from the home as Whisenton contemplated his options, it would be more reasonable to conclude his consent was freely and voluntarily given. See United States v. Smith, 688 F.3d 730, 740-41 (11th Cir.2012) (holding that the taint of the officers’ illegal entry into the defendant’s home was purged by the officers immediately retreating to the outside of the home where they waited until the defendant dressed and joined them). In addition, while Miranda warnings were given, the warnings did not occur until after the warrantless search had commenced, which significantly diminishes their impact. Thus, I conclude the inter *945 vening circumstances factor is, at best, a wash.
Finally, I believe the agents’ conduct was particularly purposeful and flagrant. Simply because the agents spoke in a cordial tone and did not handcuff Whisenton does not mean their conduct was not flagrant. Most egregious, in my mind, are the serious inconsistencies between the agents’ written report following their illegal entry and the version of events now offered by the Government. The agents’ initial report strongly implied they received consent to enter Whisenton’s home. In fact, the report contained absolutely no mention of exigent circumstances justifying the agents’ entry, even though the agents testified including the circumstances of entry — whether via consent, warrant, or exigent circumstances — would be very important. Motion to Suppress Hearing Tr. at 37. Only after being confronted with Whisenton’s surveillance video, months after the events in question, did the Government change its position and claim exigent circumstances, not consent, justified the agents’ warrantless entry. The majority adopts the district court’s finding of “no forced entry or violent entry” even though the majority also concedes the agents entered the house by pushing Whisenton’s wife back from the door with guns drawn. I would certainly classify this type of entry as forceful. In addition, the agents stormed into Whisen-ton’s home less than forty seconds after Whisenton’s wife had entered the home to retrieve Whisenton, even though the agents asked her to do exactly that. Under the Government’s logic, it seems any time law enforcement conducts a knock- and-talk, they would have a. sufficient basis to reasonably believe there was an imminent danger if they were not immediately granted consent to search the premises. I decline to condone such an outcome.
Also, I wish to emphasize the agents had at least five hours to seek a warrant to search Whisenton’s home following the arrest of Bollinger, but they failed to do so and provided no explanation for that failure. The agents arrested Bollinger at approximately 9 a.m. However, the agents did not return to Whisenton’s home until approximately 3 p.m. During this time, the agents did not maintain surveillance outside of the home nor obtain a search warrant, even though there was seemingly ample reason and opportunity to do so. Because consent searches and exigent circumstances are ripe for abuse, as perhaps demonstrated by this case, I would more strictly scrutinize such searches when the attainment of a search warrant was a reasonable alternative.
Therefore, because my balancing of the three factors weighs in favor of Whisenton, I respectfully dissent.