KELLY, Circuit Judge,
concurring.
Three relevant factors for determining whether consent purges the taint of a Fourth Amendment violation include: (1) the passage of time between the Fourth Amendment violation and the voluntary consent; (2) the existence of intervening circumstances; and (3) the purpose and flagrancy of the Fourth Amendment violation. See United States v. Barnum, 564 F.3d 964, 971 (8th Cir.2009) (citing Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). I write separately to express my concern with how the court considers the first two factors. With respect to the first factor, the court notes that Debra Brandwein consented to the search at least an hour after the officers first entered the house, and that she had been sitting in the living room for fifteen to twenty minutes before any officer asked her about consent to search. See United States v. Whisenton, 765 F.3d 938 (8th Cir.2014). But counting the passage of time between the presumed unlawful entry and the voluntary consent in this way ignores the fact that the officers never left the house. Because the officers unlawfully remained, their presence was a “continuing violation with no intervening time between the illegality and consent.” Whisenton, 765 F.3d at 944 (Bye, J., dissenting). The Fourth Amendment violation was still occurring at the time the officers obtained Debra Brandwein’s consent. As a result, there was never a break between- the officers’ unlawful conduct and the voluntary consent to support a finding that the taint had been purged.
Similarly, I question whether any intervening circumstances were present. Debra Brandwein was told that she could not touch certain items in her home, that evidence of drug manufacturing had already been found, and that officers intended to obtain a search warrant. Perhaps these circumstances gave her an opportunity “to pause and reflect, to decline consent.” See United States v. Greer, 607 F.3d 559, 564 (8th Cir.2010). But it may very well be that these circumstances, occurring as they did while the officers remained unlawfully in her home, simply reinforced her fear and, thus, her decision to acquiesce to the search. Whisenton, 765 F.3d at 944 (Bye, J., dissenting) (“asking for permission to smoke in one’s own home is evidence the prolonged unlawful intrusion had a coercive effect on [the person who ultimately gave consent]”).
Because this case bears such close factual similarity to Whisenton, I concur in the judgment of the court. Had these issues been presented to us as a matter of first impression, however, I would view these two factors as weighing in favor of the conclusion that Debra Brandwein’s consent was not “an independent act of free will” sufficient “to purge the primary taint of the [illegal] entry” into the Brandwein home. Whisenton, 765 F.3d at 941 (alteration in original) (quotation and internal quotation marks omitted).