GRIFFIN, Circuit Judge,
dissenting.
I respectfully dissent. In my view, the undisputed evidence demonstrates that defendant Moore was not searched until after he fled from Officer Lewis, thereby providing probable cause for his subsequent arrest and search, which led to the recovery of crack cocaine from his pocket. Alternatively, assuming arguendo that an unlawful search or seizure occurred, I would hold that Moore’s conduct in resisting and fleeing from Officer Lewis constituted an independent, intervening act which rendered his subsequent arrest and search incident to that arrest lawful. For these reasons, I would reverse the district court’s suppression of the crack cocaine found in Moore’s pocket.
I.
As a preliminary matter, I note that Moore did not object to below, and he does not challenge in this appeal, the magistrate judge’s ruling that the initial stop of the vehicle in which he was a passenger was constitutional. Officer Lewis, who stopped the car, had been notified by another detective that “they’d just done a drug transaction with” a particular silver Malibu and “wanted the vehicle stopped.” “It was [Officer Lewis’s] understanding that there [were] around 10 ounces of crack cocaine hidden inside the vehicle.” Officer Lewis stopped the Malibu after it failed to obey two stop signs. See United States v. Canipe, 569 F.3d 597, 601 (6th Cir.2009) (holding that an officer does not violate the Fourth Amendment when he stops a vehicle for a traffic violation, even though the officer’s subjective purpose for making the stop was his suspicion that another crime had been committed) (citing Whren v. United States, 517 U.S. 806, 813-19, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).
II.
Moore also does not argue that the search of his car was unlawful. After Offi *512 cer Lewis explained the reason for the stop — failure to obey two stop signs— Moore stated that he and his wife were lost and asked Officer Lewis to write down directions to a local mall. According to Officer Lewis, “it was obvious that [Mrs. Moore] was crying[,]” shaking, and appeared to be more nervous than the “average motorist.” In addition, “there was a strong odor of air freshener” emanating from the car. When asked by Officer Lewis why she came to Chattanooga, Mrs. Moore responded that she was visiting a friend and shopping at the mall. In Officer Lewis’s view, Mrs. Moore’s explanation was “odd” because she stated she had finished work at 5:00 p.m., had driven three hours for the trip and was heading home (a “far [distance] [for] such a short turnaround”), was driving toward the mall rather than away from it, and the mall was closed at that hour. In light of this suspicious information, Officer Lewis requested, and obtained, Mrs. Moore’s consent to search her vehicle. The district court held correctly that “the officers could thoroughly search the vehicle and its contents” based upon Mrs. Moore’s lawful consent. See United States v. Erwin, 155 F.3d 818, 823 (6th Cir.1998) (en banc) (holding that “[a] law enforcement officer does not violate the Fourth Amendment” when he “requests] for consent to search the individual’s vehicle”).
Immediately prior to the search of the car, Moore denied having contraband and pulled a cash roll of approximately $400 from his front pants pocket, which was wrapped in a rubber band. According to Officer Lewis, “[A] lot of time drug couriers wrap their money in rubber bands.” During his search of the vehicle, Officer Lewis observed that the carpet was “pulled back” on the floor of the passenger side and that the lining of a back seat cushion had also been displaced and re-secured with a safety pin as if they were hiding spots.
III.
The events most critical to this appeal occurred when officers failed to find contraband in Moore’s vehicle following their search of it. At that point, Officer Lewis approached defendant Moore and his wife and asked whether they had anything illegal on themselves. According to Officer Lewis, defendant Moore initially “wouldn’t look at me and I don’t think he even made a statement[,]” but he then said no and appeared “a little bit fldgety[.]” Moore’s reaction made Officer Lewis “suspicious.” After assuring Moore that he would be on his way in “just a second[,]” Officer Lewis told Moore to place his hands on the hood of the patrol car. When Moore turned around to do so, Officer Lewis, now standing behind him, placed one hand on defendant’s left shoulder, briefly touched his left side, motioned for another officer to approach, and instructed Moore to spread his legs. Officer Lewis testified that he “was about to ask [Moore] for consent” to search him.
Defendant is mistaken when he asserts that the district court rejected Officer Lewis’s testimony that he was “about to ask” for permission to search defendant. In fact, the district court made no such finding. The evidentiary hearing on Moore’s motion to suppress was held before a magistrate judge, who found that Officer Lewis, the only witness to testify about the alleged search, was “an extremely creditable and forthcoming witness. He is believed, and nothing else in this regard need be said.... ” Moore filed no objections to the magistrate judge’s finding that Officer Lewis was credible, and the district court did not address, let alone “reject,” any of Officer Lewis’s testimony.
*513 Although Moore complied initially with Officer Lewis’s instructions, he. then turned and fled. The entire incident, from the time Officer Lewis told Moore to place his hands on the hood of the police car to when Moore fled, lasted less than ten seconds. He was tackled a few feet away by three officers and handcuffed following a brief struggle. Approximately two ounces of crack cocaine were found in Moore’s pocket.
IV.
According to my colleagues, “the question of whether the search had begun before [Moore] tried to run ... becomes the crucial question to be resolved.” Maj. Op. at 509. The Fourth Amendment to the United. States Constitution protects against “unreasonable searches and seizures[.]” U.S. Const, amend. IV. Because the district court and my colleagues do not hold, and Moore does not argue in this appeal, that he was unreasonably seized following the lawful search of his vehicle, only the “unreasonable search[]” prohibition of the Fourth Amendment arguably applies. Cf. Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (“We are not called upon to decide in this case whether there was a ‘seizure’ of Sibron inside the restaurant antecedent to the physical seizure which accompanied the search.”).
However, the law is well-established that police conduct which does not amount to a “search” does not violate the Fourth Amendment’s protection from unreason.able searches. See United States v. Long, 464 F.3d 569, 573 n. 1 (6th Cir.2006) (stating that there is “no cognizable Fourth Amendment” claim when there is no search or seizure). As the majority correctly acknowledges, we give no deference to the district court’s legal determination that a search occurred; rather, we give the issue our fresh review. United States v. Salgado, 250 F.3d 438, 455 (6th Cir.2001) (accepting the district court’s factual findings as not clearly erroneous but reviewing de novo and affirming the district court’s ruling that the insertion of a key into a lock was not a search under the Fourth Amendment).
A.
• The majority interprets the district court’s holding as follows: “[Moore’s] attempt to flee occurred after the search had commenced.” Maj. Op. at 509. However, my colleagues misread the district court’s holding. In at least six places, the district court characterizes Officer Lewis’s conduct with respect to Moore not as a search, but as an “attempted search” or an “attempt to search” only. (Emphasis added.)[1] In its order on the government’s motion for reconsideration, the district court held similarly that “the defendant’s attempted flight occurred after the officer tried to search him.” (First emphasis omitted; second emphasis added.) Consistent with this interpretation of the district court’s holding, *514 Moore states in his appellate brief that “[t]he District Court reasoned that this attempted search was unreasonable .... ” (emphasis added), and “[t]he District Court rightly concluded that the officer’s attempt to search the Defendant was a search for drugs and not weapons. Both the conduct of the officers during the search and the fact that they waited until they completed the vehicle search to attempt to search the Defendant supports this conclusion.” (Emphasis added.) In fact, Moore virtually concedes that he was not searched when he emphasizes in the last paragraph of his argument section that “there is no question the officer was going to search him” and “Officer Lewis was going to search the Defendant for narcotics....” (Emphasis added.)
The law has long distinguished between conduct constituting a mere intent to violate the law, an attempt to do so, and the actual commission of an offense. See United States v. Resendiz-Ponce, 549 U.S. 102, 107, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007). Regarding the Fourth Amendment, the proper characterization of Officer Lewis’s conduct is not only “crucial” as the majority characterizes it, but disposi-tive as to whether a constitutional violation occurred because, unlike statutes which proscribe both attempts and completed offenses, the text of the Fourth Amendment does not.
B.
The majority fails to support its holding that a search occurred at the hood of the police car. In affirming the district court’s ruling that a Fourth Amendment violation occurred, the majority reasons:
While the officer had yet to physically reach into [Moore’s] pockets, he had physically placed [Moore] next to a car and told him to spread his legs. He also had placed his hand on [Moore’s] side. He motioned for another officer to assist, and [Moore] then attempted to run away, never escaping the officer and quickly being corralled by a number of officers. We agree with the district court that, as a matter of law, the search began when the officer physically positioned [Moore] on the hood of a police car by grabbing his shirt, instructed him to spread his legs, and then physically touched him on his side, presumably in an attempt to uncover contraband or a weapon. Officer Lewis’ intent to search was apparent, and the physical contact clearly indicates that the search had begun .... In this case, Officer Lewis lacked the requisite probable cause to begin the search when he placed a hand on [Moore], While the drugs were only recovered after [Moore] attempted to flee, the search that led to the discovery of the drugs began before the officers had probable cause, and the evidence was therefore properly suppressed.
Maj. Op. at 509-10 (internal citation omitted).
In addition to the majority’s mistaken reliance upon Officer Lewis’s purported “intent” as evidence that a search occurred, see Bond v. United States, 529 U.S. 384, 338 n. 2, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) (“[T]he issue [in determining whether an officer’s actions violate the Fourth Amendment] is not his state of mind, but the objective effect of his actions”); cf. Resendiz-Ponce, 549 U.S. at 107, 127 S.Ct. 782 (stating that “mere intent” to violate the law is not an offense), my colleagues also speculate that Officer Lewis “physically touched [Moore] on his side, presumably in an attempt to uncover contraband or a weapon.” Maj. Op. at 509. However, neither the magistrate judge nor the district court found that the very brief, fraction-of-a-second touching *515 was “an attempt to uncover contraband or a weapon.”
In his R & R, the magistrate judge found that Officer Lewis “placed one of defendant’s hands on top of the car, while placing his own hand on defendant’s shoulder. At that point, defendant bolted and ran.” Similarly, the district court found that “Officer Lewis told the defendant to place his hands on the hood of the patrol car and spread his legs. The defendant began to comply with Officer Lewis’s request, but then turned and tried to flee.” Significantly, Officer Lewis did not pat down Moore; rather, after positioning Moore on the police cruiser, Officer Lewis motioned for another officer to approach. Immediately thereafter and before the other officer responded, Moore fled.
The majority disposes of its “crucial” question — whether Officer Lewis’s conduct amounted to a search — by quoting a single sentence from an inapposite Supreme Court decision, Sibron v. New York In Sibron, a companion case to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held, in relevant part, that a police officer’s search of a defendant and seizure of heroin from him were unlawful because they were not supported by probable cause or a reasonable fear for officer safety. 392 U.S. at 62-64, 88 S.Ct. 1889. However, Sibron did not address the threshold issue posed in the present case — whether police conduct constituted a search. In fact, there was no dispute in Sibron that a search occurred when the officer “thrust his hand into [the defendant’s] pocket, discovering several glassine envelopes, which, it turned out, contained heroin.” Id. at 45, 88 S.Ct. 1889. The Sibron Court’s statement that, “[b]e-fore [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so[,]” 392 U.S. at 64, 88 S.Ct. 1889, is not a holding that a search occurs whenever an officer “places a hand” on someone, as the majority erroneously implies. Instead, the Supreme Court was merely expounding upon its general admonition in the sentence immediately preceding the quoted one that “[t]he police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries.” Id. at 64, 88 S.Ct. 1889.
C.
There was no search of Moore at the hood of the cruiser. “The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy.” California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (citations and internal quotation marks omitted). “What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.” Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Moreover, “[u]nder either the King’s or the Colonists’ English, the term ‘search’ implies something more than a superficial, external examination. It entails ‘looking through,’ ‘rummaging,’ ‘probing,’ ‘scrutiny,’ and ‘examining internally.’ ” Canipe, 569 F.3d at 605 (quoting United States v. Snow, 44 F.3d 133, 135 (2d Cir.1995)); see also Kyllo v. United States, 533 U.S. 27, 32 n. 1, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (“When the Fourth Amendment was adopted, as now, to ‘search’ meant ‘to look over or through for the purpose of finding something; to explore; to examine by inspection; as, to search the house for a book; to search the wood for a thief.’ ”) (citation omitted); Arizona v. Hicks, 480 U.S. 321, 328, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (“[A] truly cursory inspection — one that involves *516 merely looking at what is already exposed to view, without disturbing it — is not a ‘search’ for Fourth Amendment purposes, and therefore does not even require reasonable suspicion.”). In the present case, the majority cites no relevant authority that Officer Lewis’s superficial touching of Moore’s shoulder and side infringed upon Moore’s reasonable privacy expectations or amounted to the type of intrusion that we recognize as a search under the Fourth Amendment.
In this regard, Officer Lewis did not search Moore’s body for either evidence or weapons before his flight. Moreover, Officer Lewis’s touch of Moore’s shoulder and fleeting contact to his side were less intrusive than the “careful exploration of the outer surfaces of a person’s clothing all over his or her body in an attempt to find weapons” that the Supreme Court qualified as a “limited search” in Terry v. Ohio, 392 U.S. at 16, 24, 88 S.Ct. 1868 (emphasis added). In fact, Officer Lewis’s non-invasive conduct falls short of even that which has been held to be beyond the purview of a Fourth Amendment search. See United States v. Richardson, 388 F.2d 842, 845 (6th Cir.1968) (holding that an “examination of appellant’s hands under the ultraviolet light [w]as [not] a search within the meaning of the Fourth Amendment”); United States v. Ferri, 778 F.2d 985, 995 (3d Cir.1985) (holding that “the grand jury’s directive that [the defendant] submit his feet and shoes for ink printing did not constitute a ‘search’ of his person”); Stehney v. Perry, 907 F.Supp. 806, 823 (D.N.J. 1995) (“[T]he taking of a fingerprint is not a search even though it involves touching and pressing, and reveals physiological traits too minute to be considered exposed to public view in any meaningful sense.”) (citing United States v. Dionisio, 410 U.S. 1, 15, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973)); State v. Chesney, 166 Conn. 630, 353 A.2d 783, 788 (1974) (holding that “applying paraffin casts to the accused’s hands [to test for gunpowder reside] did not violate the fourth ... amendment ] any more than fingerprinting”), overruled on other grounds, State v. Stange, 212 Conn. 612, 563 A.2d 681 (1989); United States v. Holland, 378 F.Supp. 144, 155 (E.D.Pa.1974) (holding that a dental examination to see if a tooth is missing is not a search, even though it involves an intrusion into a body cavity); Perry, 907 F.Supp. at 823 (holding that a polygraph test does not constitute a search because “[t]he incidental contact involved in attaching polygraph equipment and the rather innocuous readings of heart rate, respiration and perspiration changes are hardly more intrusive than a dental examination”); Dionisio, 410 U.S. at 14-15, 93 S.Ct. 764 (1973) (stating that “[t]he physical characteristics of a person’s voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the publie[,]” and “[l]ike a man’s facial characteristics, or handwriting, his voice is repeatedly produced for others to hear” so that “[n]o person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world”); United States v. Mara, 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (“Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person’s script than there is in the tone of his voice.”).
Although each of these cases involved touching and/or actual scrutiny of a suspect — a stark contrast to the facts here— the examinations at issue nevertheless failed to qualify as Fourth Amendment searches because the suspect had no reasonable privacy expectation in the object examined, and/or the intrusion, if any, was minimal or de minimis. Such is the case *517 here. Officer Lewis’s conduct is clearly distinguishable from other police touchings that have been held to constitute searches. See, e.g., United States v. Askew, 529 F.3d 1119, 1127 (D.C.Cir.2008) (en banc) (holding that a partial unzipping of the defendant’s jacket to facilitate a show-up identification procedure during a Terry stop constituted a search); Minnesota v. Dickerson, 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (holding that “ ‘squeezing, sliding and otherwise manipulating the contents of the defendant’s pocket’ — a pocket which the officer already knew contained no weapon ... overstepped the bounds of the ‘strictly circumscribed’ search for weapons allowed under Terry ”) (internal citations omitted); see also Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (holding that the individual’s expectation of privacy triggering Fourth Amendment protections must be “one that society is prepared to recognize as reasonable”) (internal citation and quotation marks omitted); cf. Bond, 529 U.S. at 338-39, 120 S.Ct. 1462 (stating that a bus passenger who places his bag in an overhead bin “expects that other passengers or bus employees may move it” or “handle[ ]’•’ it “for one reason or another” without violating his privacy expectations, so long as other passengers or bus employees do not, “as a matter of course, feel the bag in an exploratory manner.”) (emphasis added). Because the majority’s interpretation would contravene the plain meaning of a “search” under the Fourth Amendment and the judicial mandate that the search must infringe upon a legitimate privacy interest, I would hold, consistent with Moore’s own admission that “Officer Lewis was going to search” him (emphasis added), that a search did not occur.
V.
Because Moore was not searched at the hood of the cruiser (and makes no argument that he was unlawfully seized), his flight, coupled with the panoply of other evidence causing at least reasonable suspicion to believe he possessed drugs, turned reasonable suspicion into probable cause to arrest him. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (“Headlong flight ... is the consummate act of evasion” and suggestive of guilt); see also United States v. Schaafsma, 318 F.3d 718, 722 (7th Cir.2003) (“[I]t is generally accepted that flight can be strong evidence of guilt.”) (citation and internal quotation marks omitted); United States v. Dotson, 49 F.3d 227, 231 (6th Cir.1995) (collecting cases and holding that the defendant’s “efforts to flee, coupled with [a detective’s] reasonable suspicion that [he] was involved in criminal activities, established probable cause to arrest” him); cf. Sixth Cir.Crim. Pattern Jury Instr. § 7.14 (2009) (permitting a jury to consider a defendant’s flight following his alleged commission of a crime as evidence of guilt). Thereafter, the officers’ search' of Moore and seizure of the crack cocaine from his pocket were lawful as a search incident to his valid arrest. United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (holding that after “a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment”).
VI.
Finally, assuming arguendo that an unlawful search or seizure occurred at the hood of the police car, I would also hold that Moore’s conduct in resisting and fleeing from Officer Lewis rendered his subsequent arrest and search lawful. Although we have not addressed this precise issue in a published decision, numerous courts have *518 held consistently that resistance to an unlawful search or seizure constitutes an independent, intervening act that sufficiently attenuates any connection between the unlawful search and seizure and provides legitimate grounds for a second seizure and search. See United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir.1995) (relying upon cases from the Fifth, Ninth, Tenth, and Eleventh Circuits and stating, “assuming arguendo that [the officer’s] initial stop and arrest of [the defendant] were invalid, [the defendant’s] resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible”); see also United States v. Baldwin, 114 Fed.Appx. 675, 687 (6th Cir.2004) (unpublished) (Sutton, J., dissenting) (“The exclusionary rule protects those who follow police direction after an illegal stop, not those who seek to escape out of a sense of panic or on their own suspicion that a police search is unsupported.”);[2] United States v. Castillo, No. 99-5463, 2000 WL 1800481, at * 17-*18 (6th Cir. Nov.28, 2000) (unpublished) (holding that the defendant’s “high-speed flight from [law enforcement] constituted an intervening act that purged the taint of his” allegedly unlawful detention because “[i]t is widely recognized that if a suspect’s response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime ... even if the new crime is in response to police misconduct and causally connected thereto”) (internal citations and quotation marks omitted);[3] United States v. Jefferson, No. 98-5273, 1999 WL 519298, at *4 (6th Cir. July 15,1999) (unpublished) (relying upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and holding that, “[w]hen [the defendant] used force against the officer [in an attempt to flee], even assuming the original stop did not justify a search under Terry, the officers had probable cause to arrest him for this new and independent offense. Pursuant to this lawful arrest, the officers were authorized to search [the defendant], and the evidence seized as a result of the search is admissible”); cf. United States v. Grajeda, 497 F.3d 879, 881-82 (8th Cir:2007) (“Where the initial search is invalid, the fruit of that unlawful search must be suppressed unless the evidence resulted from an intervening independent act of free will[.]”) (internal citations and quotation marks omitted).
I agree with the well-reasoned principles articulated in these cases and find them applicable to the present case. Further supporting their rationale is that Tennessee law makes it a crime “to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer ... from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.” Tenn.Ct>de. *519 Ann. § 39-16-602(a). The definition of “[f]orce ... shall be broadly construed to accomplish the purposes of this title[,]” Tenn.Code Ann. § 39 — 11—106(a)(12), and except for specific reasons, none of which are applicable here, “it is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful.” Tenn.Code Ann. § 39-16-602(b). The Tennessee courts have held that “movements such as ‘twisting, turning, pulling away,’ and ‘flailing one’s arms’ while police officers are attempting to place a defendant in custody is sufficient force to sustain a conviction” under § 39-16-602(a). State v. Powell, No. M2004-03034-CCA-R3-CD, 2005 WL 1950221, at *3 (Tenn.Crim.App. Aug.15, 2005) (unpublished) (affirming conviction under § 39-16-602(a) where the defendant “pulled one of his arms away as he was being handcuffed”) (internal quotation marks omitted); see also State v. Boyd, No. M2004-00580-CCA-R3-CD, 2005 WL 885091, at *3 (Tenn.Crim.App. Apr.15, 2005) (unpublished) (collecting cases). Thus, assuming arguendo that Officer Lewis unlawfully searched or seized Moore when he instructed Moore to put his hands on the hood of the police car and touched his shoulder and side, Moore’s conduct in turning, pulling, and attempting to run away from Officer Lewis constituted probable cause to arrest Moore for committing the independent crime of resisting and obstructing an officer under Tennessee Code Annotated § 39-16-602(a). Moore’s subsequent arrest and search incident to that arrest were then lawful, and the crack cocaine obtained pursuant to them should not have been suppressed.[4] Robinson, 414 U.S. at 234, 94 S.Ct. 467.
*520 VII.
For these reasons, the district court erred in granting Moore’s motion to suppress, and I would reverse that judgment. I therefore respectfully dissent.

. The district court stated: “For the reasons discussed below, the defendant’s objection to the finding related to the attempted search of his person, will be granted and. the evidence seized from his person will be suppressed” (emphasis added); "[t]he defendant’s second objection concerns the attempted search of the defendant’s person” (emphasis added); "[t]he court finds that Officer Lewis's attempt to search the defendant’s person was not related to any concern for 'officer safety’ and the search cannot be justified as a patdown for weapons” (emphasis added); "[t]he court has thoroughly reviewed the video and the events leading up to the attempted search ...." (emphasis added); “[t]he crack cocaine that was found on the defendant was a direct result of the unlawful attempt to search the defendant” (emphasis added); "[tjlierefore, the court finds the defendant’s objection to the report and recommendation concerning the attempted search of his person well taken.”

. In Baldwin, the majority rejected the government’s argument that the defendant's resistance and flight following an illegal detention and pat down search established an "independent source[] for the admission of [] evidence^]” 114 Fed.Appx. at 682. However, it did so because "the subsequent detention following [the defendant's] resistance failed to reveal any evidence that was not already known to [the officer.] ... [T]he subsequent searches ... uncovered no new or additional evidence.” Id. These facts, which the Baldwin majority characterized as "critical” and distinguishable from those in Baldwin, 114 Fed.Appx. at 682, are absent from the present case. Here, Officer Lewis did not discover the crack cocaine prior to Moore's flight; rather, the contraband was found after Moore fled and therefore constituted "new or additional evidence.” Id.

. Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis but may be considered for their persuasive value. United States v. Sanford, 476 F.3d 391, 396 (6th Cir.2007).

. Although the majority "acknowledgefs] that Defendant’s attempt to flee after the search began may have implications for the probable cause analysis,” it declines to consider them.
The government raised the issue in its response to Moore's motion to suppress, in which it argued that "[t]he defendant’s sudden flight then translated the affair from one of reasonable suspicion under Terry to one of probable cause to make an arrest. Therefore, the search of defendant Gary Moore’s person after his seizure was justified.” In his R & R, the magistrate judge addressed the three arguments made by Moore in support of his motion to suppress, none of which asserted that his attempt to escape was irrelevant to the probable cause determination. The magistrate judge denied Moore’s suppression motion on the alternative grounds that the police had either reasonable suspicion that Moore was armed to justify a pat down or probable cause to believe he possessed contraband to warrant an arrest and search. In so ruling, the magistrate judge did not address the issue of Moore’s flight, although he had done so in his first R & R in which he held that "Defendant's sudden flight on foot translated the affair from one of reasonable suspicion under Terry to one of probable cause to make an arrest, and the search of defendant’s person after his seizure was justified.”
The majority and the district court would apparently impart upon the government an unfair obligation to object not only to a favorable ruling, but also to a ruling that was never made because the movant chose not to raise the issue again after having already received an adverse ruling in a prior R & R from the same magistrate judge. Significantly, Moore did not make any arguments about his flight in his own objections to the operative R & R. The district court’s order sustaining Moore’s objections, declining to adopt the R & R, and granting the motion to suppress did not address or provide any indication that it had considered his flight as relevant. Therefore, it was wholly proper for the government to remind the court in its motion for reconsideration, as it had argued previously and to which the magistrate judge had agreed, that Moore’s flight was crucial to the probable cause inquiry. Under our precedent, the government did not waive the issue. Cf. Souter v. Jones, 395 F.3d 577, 586 (6th Cir.2005) (”[W]e have held that a party, who substantially prevails in a magistrate judge's recommendation, does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation.”).
Moreover, although the government did not cite to Tennessee Revised Code Annotated *520 § 39-16-602(a) in its appellate brief; it argued that, "at the time defendant’s person was searched and the crack cocaine was seized from his pocket, the following circumstances established probable cause that defendant possessed illegal drugs: ... When ordered to place his hands on the cruiser and spread his legs, thereby suggesting that a frisk or search was imminent, defendant Hed[J” and ”[t]he search of defendant’s person was therefore lawful as a search incident to arrest.” The government also emphasized in its brief that "no actual violation of the Fourth Amendment precipitated defendant's flightf,]” and "the [district] court refused to even consider defendant’s flight as a factor in its probable-cause assessment because of its erroneous finding about its temporal relationship to a potential search by Lewis.” (Second emphasis added.) At oral argument, the government argued vigorously that Moore's flight allowed law enforcement to arrest and search him. Therefore, the government did not forfeit the issue in this appeal.